**Michele A. CAVE, Petitioner and Appellee**

v.

**Sheri WETZEL, Respondent and Appellant.**

**Civil No. 950364.**

Supreme Court of North Dakota.

March 15, 1996.

Kent M. Morrow, Severin and Ringsak, Bismarck, for respondent and appellant. Submitted on brief.

Petitioner and appellee did not file a brief and did not appear.

VANDE WALLE, Chief Justice.

Sheri Wetzel appealed from a disorderly-conduct restraining order, issued under section 12.1–31.2–01, NDCC, which prevents Wetzel from having contact with Michele Cave. Because there is sufficient evidence to support the order, we affirm.

On October 9, 1995, Cave filed a petition seeking a restraining order against Wetzel.

The trial court issued an ex parte temporary restraining order and scheduled a hearing on the petition for October 20, 1995. After a hearing, the trial court determined there were reasonable grounds to believe that Wetzel engaged in disorderly conduct, and issued a disorderly-conduct restraining order commanding Wetzel to have "no contact" with Cave for a one-year period. In addition to prohibiting Wetzel from making uninvited visits and harassing phone calls, the trial court ordered Wetzel to refrain from making "any type of telephone calls to Petitioner or her residence" and to "remain away from Petitioner and her children at all times." Wetzel was forbidden to go within one block of Cave's residence or her children's school. On appeal, Wetzel claims the trial court erred when it determined that "reasonable grounds" existed to support the issuance of the disorderly-conduct restraining order.

Under section 12.1–31.2–01, NDCC, the district court is authorized to grant a "no contact" order if the court finds "reasonable grounds to believe that the respondent has engaged in disorderly conduct." See Williams v. Spilovoy, 536 N.W.2d 383 (N.D. 1995). "Disorderly conduct" is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person. Disorderly conduct does not include constitutionally protected activity." N.D.Cent.Code § 12.1–31.2–01(1). Since chapter 12.1–31.2, NDCC, does not define "reasonable grounds," we have construed the "reasonable grounds" requirement to be synonymous with "probable cause." Williams, supra [citing Svedberg v. Stamness, 525 N.W.2d 678 (N.D.1994)]. We have explained that "[r]easonable grounds exist for purposes of this section when facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed." Svedberg, 525 N.W.2d at 682; see also Williams, supra.

■ As evidence of reasonable grounds to believe Wetzel engaged in disorderly conduct, the trial court found that Wetzel made uninvited visits to Cave's home at times when Wetzel had been drinking. The trial court determined that Wetzel made numerous hang-up calls to Cave's home and that the calls had been traced to Wetzel's residence or to pay phones Wetzel had used. Furthermore, the trial court found that Wetzel's "pattern of intimidation," stemming from the repeated hang-up calls, created fear in Cave and her children. After our review of the record and transcript, we believe that reasonable grounds existed for the trial court to issue the restraining order.

Cave and Wetzel both testified at the hearing. Cave testified that Wetzel made more than ten hang-up calls to Cave's residence on October 5, 1995. With the use of "Caller ID," Cave identified six of the calls as being made from Wetzel's residence and four of the calls as being made from pay phones. Cave testified that an officer from the Bismarck police department and an officer from the highway patrol came to her home to see the identification. Cave stated that the officers advised Cave to seek a protection order.

Cave testified that, because the hang-up calls continued from various pay phones, the telephone company put a tracer on her telephone. She also testified that, with a police detective's assistance, she discovered the calls were being made from three different pay phones. On October 12, 1995, Cave received calls on the average of every 45 minutes. After tracing the calls to a particular telephone booth, the police detective went to the booth's location. At 4:45 p.m., Cave received a hang-up call, which the tracer recorded. Cave testified that at 4:45 p.m. the detective saw Wetzel make a call from the telephone booth to which the hang-up call was traced.

Because her husband was at the police academy, Cave testified that she wanted protection, particularly since the October 12th incident was a violation of the temporary restraining order. Although Cave and Wetzel were friends at one time, Cave stated that "it got to the point where all the time [Wetzel] was coming over to the house and she would be drunk." Cave asked Wetzel to stay away from her home, but Wetzel continued to make uninvited visits.

In her affidavit, Cave asserted that Wetzel "has a temper and can become violent and

vengeful, esp[e]cially after drinking." Cave alleged that Wetzel, after arriving at Cave's home intoxicated and uninvited, would "get out of her car in front of our kids with open beer in her hand and proceed to make a fool of herself." Cave alleged that on one occasion when Wetzel was intoxicated she "showed up at our residence ... with her shirt wrapped [around] her neck, choking herself" and claiming she was attacked. Wetzel allegedly displayed this behavior in front of the children and later admitted she was not assaulted.

Wetzel testified that she worked with Cave's husband and developed a friendship with him. She stated it was his idea for Wetzel to become friends with his wife. Wetzel testified that after she was asked not to visit Cave's home she did not go there, with the exception of a time in March when Cave's husband worked on her car. Wetzel testified to an alibi which allegedly did not afford her the opportunity to make the hang-up calls of October 5, 1995. Wetzel further testified that she did not make any hang-up calls to the Cave residence.

█ Cave and Wetzel offered conflicting testimony. " '[T]he trial court is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence than we who have only the cold record to review.' " *Svedberg,* 525 N.W.2d at 682 [quoting *Ludwig v. Burchill,* 481 N.W.2d 464, 469 (N.D.1992) ]. After reviewing the conflicting testimony and the district court's findings, it is obvious to us that the judge believed Cave. We conclude the trial court did not err by accepting Cave's testimony.

Wetzel argues that this case is similar to *Williams v. Spilovoy,* 536 N.W.2d 383 (N.D. 1995), in which we stated that in order to support a disorderly-conduct restraining order under section 12.1–31.2–01, NDCC, "the petitioner must present evidence of specific acts or threats constituting disorderly conduct." Wetzel contends that Cave presented only vague, general allegations of harassment. To support her argument, Wetzel states "[t]here was no evidence of threats ... in any of the [p]hone calls. In fact, the phone calls were all hang-up calls, lasting a short period of time. Nothing was said and no conversation ensued.... There was no evidence of any fear other than Cave's subjective fear." We disagree with Wetzel's argument and distinguish her case from *Williams.*

In *Williams,* we determined the evidence was insufficient to support a restraining order when an ex-wife, without specific detail, characterized a telephone call from her ex-husband as harassing and verbally abusive. A transcript of the conversation did not reveal conduct rising to the level of disorderly conduct under the statute. Furthermore, there was no evidence of a large number of calls or that the ex-wife's safety, security, or privacy were endangered. We acknowledged that, while unwelcome, some contact is to be expected between divorced spouses in a split custody situation and that, under the circumstances, the telephone call did not warrant the restraining order. But, we cautioned that in some instances "mere presence is sufficient to cause such emotional stress as to adversely affect the safety, security, or privacy of the other person." *Williams,* 536 N.W.2d at 385 [citing *State v. Monson,* 518 N.W.2d 171 (N.D.1994) ].

In this instance, Cave testified to receiving telephone calls at specific times on specific dates. Although the telephone calls did not include "threats," Cave testified of her fear for her safety and for the safety of her two children:

> "I know what she was up to. She wanted to break my day and harass me. You try to live with that every 45 minutes of that day. It got to the point my kids don't answer the phone. They are scared. I do not let them answer the phone. All I am saying, if she would just stop that, that would be fine. I just want her to stop. I want her to stay away. And I've been told by the Highway Patrol it could get worse.

> "Just the fact that she has found time enough to harass me is enough for me. As a mom I feel uncomfortable about [my children] leaving and walking to school. I walk them to school. I pick them up after school. The school has been informed about this.

"Yes, it is just hang-up calls; but I don't know how bad and what could happen. . . ."

Here, contrary to the facts in *Williams*, there was no need for Wetzel to call the Cave home. The telephone calls served no purpose but to harass and intimidate. We believe that the trial court, having found Cave's testimony credible, did not err when it determined that a pattern of hang-up calls adversely affected Cave's safety, security, or privacy. In this instance, the evidence was sufficient to warrant the restraining order.

We affirm the disorderly-conduct restraining order.

Because of a vacancy on the Court at the time of hearing and decision, this case was decided by four Justices.

SANDSTROM, NEUMANN and MESCHKE, JJ., concur.