1999 ND 176

**Kathleen TIBOR, n/k/a Kathleen Zich, Applicant and Appellee,**

v.

**Lorna LUND, Respondent and Appellant.**

No. 990086.

Supreme Court of North Dakota.

Aug. 30, 1999.

Melissa A. Hauer, Wheeler Wolf, Bismarck, ND, for applicant and appellee.

Isabella Robertson, Robertson Law Office, P.C., Bismarck, ND, for respondent and appellant.

MARING, Justice.

[¶ 1] Lorna Lund appealed from a district court order granting Kathy Zich's motion for a disorderly conduct restraining order. We reverse and vacate the restraining order.

[¶ 2] Kathy Zich and Bryan Tibor were married in 1986 and divorced in 1995. Under the terms of the original divorce judgment, Kathy and Bryan shared legal and physical custody of their three daughters. In 1997 the divorce judgment was amended, designating Kathy as primary custodian, but with Bryan entitled to physical custody "for significant amounts of time." *Tibor v. Zich*, 1999 ND 150, ¶¶ 3, 7, 598 N.W.2d 480.

[¶ 3] Lorna Lund has known the Tibor family since 1990. After Kathy and Bryan divorced, Bryan married Lorna. There was some degree of marital discord, and on one occasion Lorna obtained a domestic violence restraining order against Bryan. Lorna eventually left Bryan in August 1998 and they divorced. Lorna moved to Fargo but, according to Lorna's affidavit, she and Bryan continued to see each other and were "trying very hard to work things out."

[¶ 4] In February 1999 Kathy sought a disorderly conduct restraining order against Lorna. Her petition alleged Lorna had been advised to have no contact with the children, but Lorna had attempted to see the children on two occasions. On the first occasion, on December 26, 1998, Lorna was present at Bryan's home while the children were visiting there. On the second occasion, in January 1999, Lorna stopped at the children's daycare in an attempt to visit the children, but they were not there.

[¶ 5] Following a hearing, the district court found there were reasonable grounds to believe Lorna had engaged in disorderly conduct by initiating unwanted contacts with the Tibor children. The court issued a disorderly conduct restraining order prohibiting Lund from contacting the children or Kathy personally, by phone, or in writing, or from being within 100 feet of the children or Kathy. Lorna appealed.

[¶ 6] Under N.D.C.C. § 12.1–31.2–01(5), a court may issue a disorderly conduct restraining order only if the court finds "there are reasonable grounds to believe that the respondent has engaged in disorderly conduct." Disorderly conduct is defined in N.D.C.C. § 12.1–31.2–01(1):

> "Disorderly conduct" means intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another per-

son. Disorderly conduct does not include constitutionally protected activity. The statute empowers the court to restrain further criminal acts, and "[t]he statutory authority to enjoin these criminal acts provides the sole basis for" issuance of a disorderly conduct restraining order. *Svedberg v. Stamness,* 525 N.W.2d 678, 681 (N.D.1994).

[¶ 7] We have concluded that "reasonable grounds" is synonymous with "probable cause." *Id.* at 681–82. Thus, for purposes of N.D.C.C. § 12.1–31.2–01, reasonable grounds exist "when facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed." *Svedberg,* at 682; *see also Wishnatsky v. Huey,* 1997 ND 35, ¶ 14, 560 N.W.2d 878. To support a request for a disorderly conduct restraining order, the petitioner must present evidence of specific acts or threats constituting disorderly conduct, and "subjective fear" is not sufficient to support an order. *Wishnatsky,* at ¶ 14; *Williams v. Spilovoy,* 536 N.W.2d 383, 384–85 (N.D.1995).

[¶ 8] The trial court found there were reasonable grounds to believe Lorna had engaged in disorderly conduct because her contacts with the children were "unwanted." Kathy asserts that, after being advised she should not see the children,[1] Lorna's one contact and one attempted contact with the children constitute disorderly conduct under the statute.

[¶ 9] In order to support a disorderly conduct restraining order under N.D.C.C. § 12.1–31.2–01, it is not enough to show merely that the actions of a person are "unwanted." The petitioner must show specific "unwanted acts ... that are intended to adversely affect the safety, security, or privacy of another person." N.D.C.C. § 12.1–31.2–01(1). There has been no showing Lorna's acts were intend-

---

1. The evidence was very vague whether Lorna was ever directly told she should not see the children. Lorna testified she was never told she should not see them.

ed to affect the safety, security, or privacy of the children.

[¶ 10] Lorna's conduct must be viewed in context. She had known these children for more than eight years. She had been their stepmother and had spent an extensive amount of time with them as members of the same family. Although she had divorced Bryan, at the time of these contacts she and Bryan were seeing each other again and attempting to "work things out." The first alleged unwanted act occurred on the day after Christmas of 1998, when Lorna was visiting Bryan and the children were dropped off for their scheduled visitation. The second occurred a few weeks later when Lorna, on her way home to Fargo after visiting Bryan, and with Bryan's knowledge, briefly stopped at the daycare center to attempt to see the children.

[¶ 11] Nothing in the circumstances of Lorna's acts demonstrates an intent to adversely affect the safety, security, or privacy of the children. Lorna was not a stranger to the children, and there was no evidence the children feared her. Her conduct was not threatening, harassing, or intimidating. *See Wishnatsky*, 1997 ND 35, ¶ 15, 560 N.W.2d 878; *Svedberg*, 525 N.W.2d at 679–80, 682. Nor was there evidence Lorna's conduct had become a "pattern of intimidation." *See Cave v. Wetzel*, 545 N.W.2d 149, 150 (N.D.1996).

[¶ 12] We have previously cautioned that "[i]t is not enough under the statute that the petitioner for a restraining order wants the other person out of the petitioner's life." *Williams*, 536 N.W.2d at 385. The result urged by Kathy trivializes the statute, making it applicable any time a person decides she or her children should not be in contact with a particular person, even in the absence of threats, fear, harassment, intimidation, or a pattern of conduct. Absent a showing of an intent to adversely affect the safety, security, or privacy of another person, evidenced by threatening, harassing, intimidating, or repeated or past conduct, one's "mere pres-

ence" does not constitute disorderly conduct. *See id.*

[¶ 13] We are mindful of the precedent we would set were we to accept Kathy's argument and affirm this order. It is not hard to imagine that our trial courts would be inundated with petitions for disorderly conduct restraining orders from custodial parents seeking to limit contacts by other persons with the children. Experience tells us that it is far from uncommon for the divorced custodial parent to disapprove of the ex-spouse's new girlfriend, new boyfriend, or new spouse. The same may often be true of the custodial parent's view of the ex-spouse's family and friends. Certainly it was not the intent of the legislature to authorize a disorderly conduct restraining order whenever a custodial parent decides that he or she does not want the children to be in contact with a particular person in the ex-spouse's circle of acquaintances. Were we to adopt Kathy's argument, we would be opening the floodgates to further complexities in divorce cases. Resolving conflicts in divorced families, and effecting meaningful visitation with minimal discord, is difficult enough without adding this statute as a routine weapon to the arsenal of ex-spouses.

[¶ 14] We conclude Lorna's "unwanted" contacts with the children did not, as a matter of law, constitute disorderly conduct under N.D.C.C. § 12.1–31.2–01.

[¶ 15] Although not cited by the trial court as a basis for its order, Kathy asserts there was evidence of specific harm to the children caused by Lorna's contacts. Kathy alleges Bryan's abuse of Lorna in front of the children was detrimental to them, and therefore Lorna's presence with Bryan and the children constitutes disorderly conduct.

[¶ 16] There is no allegation that Lorna has ever abused Bryan or the children, only that Bryan's abuse of Lorna has adversely affected the children. In essence, Kathy is asserting Lorna is guilty of disor-

derly conduct, and should therefore be subject to a restraining order, because Bryan has abused Lorna in front of the children.[2] We find this argument to be without merit and totally lacking in not only an understanding of the acts contemplated by the statute, but also an understanding of domestic abuse.

[¶ 17] While it may be true that Bryan's alleged abuse of Lorna is harmful to the children, it is Bryan's conduct, not Lorna's. It certainly is not evidence that Lorna has committed acts which constitute the offense of disorderly conduct. *See Wishnatsky*, 1997 ND 35, ¶ 14, 560 N.W.2d 878; *Svedberg*, 525 N.W.2d at 682. If Kathy is concerned about the effects of alleged abuse committed in the children's presence, the proper remedy is to seek restrictions or conditions upon Bryan's visitation, not to saddle Lorna, the alleged victim, with the stigma of a disorderly conduct restraining order. A copy of the restraining order is sent to local law enforcement agencies, which are authorized to disseminate the information to all of their officers. N.D.C.C. § 12.1-31.2-01(9). When the disorderly conduct restraining order was issued, Lorna also became subject to criminal penalties for contacting the children and arrest without warrant under N.D.C.C. § 12.1-31.2-01(8). If we were to hold Lorna committed disorderly conduct because she was abused in front of the children, it would be the ultimate victimization of the victim.

[¶ 18] We hold, as a matter of law, Lorna's conduct did not constitute disorderly conduct justifying issuance of a restraining order under N.D.C.C. § 12.1-31.2-01. We reverse the order of the district court and vacate the disorderly conduct restraining order against Lorna Lund.

[¶ 19] KAPSNER, NEUMANN and RONALD L. HILDEN, D.J., concur.

[¶ 20] RONALD L. HILDEN, D. J., sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 21] The majority opinion analyzes the circumstances of the case from the standpoint of the person who is the object of the disorderly conduct restraining order. Under the facts of this case, I do not disagree with the majority's analysis and, in particular, I agree with ¶¶ 16 and 17 in which the majority firmly rejects the suggestion Bryan's abuse of Lorna is an appropriate basis for the order. I write separately, however, because I am concerned with the majority's analysis of reasonable grounds as applied to the visit to the daycare center.

[¶ 22] I need not cite the numerous cases, reported in opinions of the courts of various jurisdictions and in the media, in which children have been "snatched" from a school setting by someone purporting to be a friend, relative, or parent of the child. In some instances the person is a friend or relative and often may be the noncustodial parent. Absent an open invitation by the school to visit on a particular day, such as grandparents day, I view such visits with suspicion. A friend or relative, or even a noncustodial parent, who finds it necessary to visit the children at a daycare or a school creates sufficient "probable cause" to, in my mind, believe the person knows their visit is unwanted by the custodial parent(s) of the child. Furthermore, the all too-common experience of child snatching from schools may, of itself, be sufficient to create a reasonable grounds to believe the person may intend to adversely affect the safety, privacy, and security of the child and the custodial parent.

[¶ 23] I agree with the majority we should be concerned with precedent and not trivialize the statute; but experience also suggests there is reason to view these contacts made at daycare centers and

---

**2.** The parties dispute whether Bryan has abused Lorna.

schools with a good deal of suspicion. I hope the majority opinion is not read to discount the lessons we ought to learn from experience.

[¶ 24] Gerald W. VandeWalle, C.J.