2002 ND 97

**Sonja SKADBERG, Petitioner and Appellee,**

v.

**Todd SKADBERG, Respondent and Appellant.**

No. 20010261.

Supreme Court of North Dakota.

June 4, 2002.

Sonja Skadberg (no appearance), pro se, Mandan, ND, for petitioner and appellee.

Shari McPhail, McPhail Law Firm, Logans on Third, Bismarck, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1] Todd Skadberg appeals from the district court's issuance of a disorderly conduct restraining order preventing him from contacting his ex-wife, Sonja Skadberg. We conclude there were reasonable grounds for the issuance of the order, and that Todd was afforded a full hearing. We further conclude Todd's visitation with his daughter has not been unreasonably restricted following the disorderly conduct restraining order. We affirm the district court's order.

I

[¶ 2] On September 28, 2001, Sonja petitioned for a disorderly conduct restraining order against Todd. Her petition alleged multiple harassing telephone calls, some of which were hang-ups, and that the calls were affecting their daughter, who was three years old at the time. She also alleged Todd threatened a friend of hers. A temporary disorderly conduct restraining order, prohibiting Todd from having any contact with Sonja and their daughter until a hearing on the petition could be held, was issued the same day.

[¶ 3] The hearing on Sonja's petition was held October 8, 2001. The district court accepted Sonja's affidavit as her testimony and allowed Todd to cross-examine her on the same. Todd submitted an affidavit but did not testify at the hearing. Following the hearing, the district court issued the disorderly conduct restraining order, but lifted the no-contact order between Todd and his daughter. The disorderly conduct restraining order was to remain in effect for one year.

[¶ 4] Todd appeals the disorderly conduct restraining order, arguing there were not reasonable grounds for its issuance because Sonja did not present evidence of specific acts or threats constituting disorderly conduct. Todd also argues he was denied due process because a full hearing on the disorderly conduct restraining order was not held. Finally, Todd argues the visitation and telephone schedule impermissibly limit his right to enjoy a relationship with his daughter.

II

[¶ 5] A court may grant a disorderly conduct restraining order if the court finds "there are reasonable grounds to believe that the respondent has engaged in disorderly conduct." N.D.C.C. § 12.1–31.2–01(5)(d). Disorderly conduct is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person. [It] does not include constitutionally protected activity." *Id.* § 12.1–31.2–

01(1). We have concluded "'reasonable grounds' is synonymous with 'probable cause.'" *Tibor v. Lund,* 1999 ND 176, ¶ 7, 599 N.W.2d 301.

■■ [¶ 6] "Reasonable grounds exist for purposes of this section when facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed." *Svedberg v. Stamness,* 525 N.W.2d 678, 682 (N.D.1994). "To support a request for a disorderly conduct restraining order under the statute the petitioner must present evidence of specific acts or threats constituting disorderly conduct...." *Wishnatsky v. Huey,* 1997 ND 35, ¶ 14, 560 N.W.2d 878. It is not enough to show the actions of a person are unwanted, but rather, "[t]he petitioner must show specific 'unwanted acts ... that are intended to adversely affect the safety, security, or privacy of another person.'" *Tibor,* 1999 ND 176, ¶ 9, 599 N.W.2d 301.

[¶ 7] Sonja's evidence of Todd engaging in disorderly conduct came from the affidavit accompanying her petition for the restraining order and her testimony on cross-examination. In her affidavit Sonja stated:

> I am receiving calls at all hours of the day and night with very obscene language and name calling. Todd is harrassing [sic] me about [the] tax rebate from the IRS, threatening to tell the IRS that I forged his signature on an IRS return....
>
> Todd calls to harrass [sic] me about my personal life, calling me names such as [b]itch, whore, etc. and to tell me that he hates my guts....

Our divorce is final but his calls, and frequency and severity of the calls, are getting worse. It is affecting our daughter, age 3.

[¶ 8] On cross-examination, Sonja testified regarding the contents of her affidavit. She testified she received telephone calls from Todd during which she believed her safety was threatened: "[h]e threatened my safety in the fact that he would—the language he would use. When someone is so angry and screaming at you in a high-pitched voice like a woman, using obscene language, it's a threat to your safety." Sonja further testified to receiving a phone call from Todd "[a]t least every three days." Some telephone calls were received late at night, "[a]nywhere from 10:00 [p.m.] to 2:00 a.m." Phone calls at this time of the night "[were] hang up calls," and "since the restraining order our phone hasn't rang once."

■ [¶ 9] Todd's affidavit not only disputed Sonja's characterization of the telephone calls as threatening, but also disputed the time of the evening the phone calls were placed.[1] The district court, after reading the affidavits of both Sonja and Todd and hearing Sonja's testimony, chose to accept and believe Sonja's version of the events. "'[T]he trial court is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence than we who have only the cold record to review.'" *Svedberg,* 525 N.W.2d at 682. "This is a province firmly entrusted to the trial court, and we will generally defer to its expertise." *Id.*

■ [¶ 10] While support in the record for the order is sparse, a person of reasonable caution could believe acts consti-

---

1. Todd also argues the language complained of in Sonja's affidavit is constitutionally protected activity under the First Amendment. "Disorderly conduct does not include constitutionally protected activity." N.D.C.C. § 12.1–32.1–01(1). Todd raises this argument for the first time on appeal. "This Court does not consider arguments raised for the first time on appeal." *State ex rel. D.D. v. G.K.,* 2000 ND 101, ¶ 6, 611 N.W.2d 179.

tuting disorderly conduct had been committed. Sonja testified to telephone calls, some of which were hang-ups, on specific dates placed at the same general time of the night. She testified the number and frequency of the telephone calls were affecting their daughter. It was reasonable to conclude the calls served no purpose other than to harass and intimidate Sonja. *See Cave v. Wetzel*, 545 N.W.2d 149, 152 (N.D.1996) (affirming the district court's granting of a disorderly conduct restraining order because a pattern of hang-up telephone calls "served no purpose but to harass and intimidate"). The district court, having found Sonja's testimony credible, did not err in determining the pattern of hang-up telephone calls adversely affected Sonja's safety, security, or privacy.

### III

[¶ 11] Todd argues a full hearing was not held on the disorderly conduct restraining order petition. He argues because he did not testify at the hearing, it was not a full hearing.

[¶ 12] Following a petition for a disorderly conduct restraining order, a hearing on the petition must be held. N.D.C.C. § 12.1–31.2–01(5). The hearing is to be a "full hearing:"

> If the petition for relief alleges reasonable grounds to believe that an individual has engaged in disorderly conduct, the court, pending a full hearing, may grant a temporary disorderly conduct restraining order ordering the individual to cease or avoid the disorderly conduct or to have no contact with the person requesting the order.

*Id.* § 12.1–31.2–01(4). We have never defined what constitutes a "full hearing" under N.D.C.C. § 12.1–31.2–01.

[¶ 13] A majority of this Court has held a "full hearing" for a domestic violence protection order under N.D.C.C. § 14–

07.1–02 authorizes a district court "to hear the evidence on affidavits or . . . partly on affidavits and partly by cross-examination of each affiant." *Sandbeck v. Rockwell*, 524 N.W.2d 846, 850 (N.D.1994). Like the domestic violence protection order statute, the disorderly conduct restraining order statute creates a special summary proceeding and directs a hearing upon order of the district court. *Compare* N.D.C.C. § 12.1–31.2–01 *with* N.D.C.C. § 14–07.1–02. Both statutes seek to quickly and effectively combat volatile situations before any tragic escalation.

[¶ 14] The district court accepted affidavits from both Todd and Sonja regarding the allegations in the petition. Todd never testified at the hearing, but did cross-examine Sonja regarding the contents of her affidavit. When asked if he had anything further to present to the district court following Sonja's cross-examination, Todd replied he had nothing further to present. At no time during the hearing did Todd object to the form of the hearing. By accepting affidavits and allowing cross-examination, the district court conducted a full hearing on the disorderly conduct restraining order petition. *See Sandbeck*, 524 N.W.2d at 850.

### IV

[¶ 15] Todd argues his parental right of visitation with his daughter is unreasonably restricted with the imposition of the disorderly conduct restraining order. The order does not change the provisions of the divorce judgment regarding visitation, it just alters where exchanges are to take place. The original visitation schedule is not in the record. Todd's brief filed with this Court asserted he previously had visitation on alternating weekends, mid-week evenings, and daily telephone contact.

[¶ 16] Each parent of a child has the "[r]ight to reasonable access to the child by written, telephonic, and electronic means." N.D.C.C. § 14–09–28(1)(c). "The primary purpose of visitation is not to promote the wishes or desires of the parents, but to promote the best interests of the children." *Tibor v. Tibor,* 2001 ND 43, ¶ 8, 623 N.W.2d 12. "[V]isitation between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child." *Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 21, 603 N.W.2d 896.

[¶ 17] The disorderly conduct restraining order cannot be read as changing the provisions of the divorce judgment, which were not made part of this record. The order still allows Todd access to his daughter under the visitation provisions in the divorce judgment. Rather than restricting contact with his daughter, the disorderly conduct restraining order only directs where exchanges are to take place for purposes of visitation.

## V

[¶ 18] Reasonable grounds existed for the issuance of the disorderly conduct restraining order. A full hearing was held on the petition for the order, and Todd's visitation with his daughter has not been unreasonably restricted. We affirm.

[¶ 19]GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 20] *Sandbeck v. Rockwell,* 524 N.W.2d 846 (N.D.1994), relied on by the majority, remains a blight on our jurisprudence. As noted in the *Sandbeck* dissent:

The trial court ... notified Rockwell he was to appear and show cause why a protection order should not issue. Rely-

ing upon this notice, Rockwell appeared and prepared to present evidence. Only then did the trial court announce affidavits were to be previously filed to present the evidence at the hearing. The notice given to Rockwell nowhere mentions this requirement. The majority contends the filing of affidavits was inferred because of the nature of the "action." The length of the majority's analysis belies this inference. Were it a simple question, only a simple answer would be necessary. Because Rockwell, acting pro se, did not receive notice specifying the manner in which to respond to the allegations, and which neither he nor any competent lawyer could infer, Rockwell was denied due process.

In argument to the trial court and to this Court, Rockwell contended he neither threatened nor harassed Sandbeck. He contends that when she saw him with his new special friend, Sandbeck out of jealousy filed this action to impugn his reputation. He contends he has specific evidence, including a witness other than himself, to refute Sandbeck's allegations of threats and harassment. He was denied the opportunity to present relevant evidence.

*Sandbeck,* 524 N.W.2d at 853–54.

SANDSTROM, J., dissenting.

[¶ 21] I continue to believe that "[r]espect for law and human dignity can best be fostered by a process that is fair and just." *Sandbeck,* 524 N.W.2d at 852 (Sandstrom, J., dissenting). Rockwell was not afforded a fair and just process in that case. He clearly objected to the process and made a record of what he would have presented had he been permitted.

[¶ 22] After careful review of the record in this case, I cannot conclude that Todd Skadberg objected to the process or

was prevented from presenting evidence. I therefore concur in the result.

[¶ 16]   Dale V. Sandstrom