2004 ND 76

**Jody GULLICKSON, Petitioner and Appellee**

v.

**John KLINE, Respondent and Appellant.**

**No. 20030223.**

Supreme Court of North Dakota.

April 13, 2004.

Jody Gullickson (no appearance).

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for respondent and appellant.

NEUMANN, Justice.

[¶ 1] John Kline appeals from a disorderly conduct restraining order directing him to have no contact with Jody Gullickson. We reverse and remand, concluding that the trial court committed errors during the hearing on the restraining order which, when considered in their totality, denied Kline a full and fair hearing and violated his right to due process.

I

[¶ 2] Jody Gullickson is the mayor of the city of Max, and John Kline is a resident of Max. In June 2003, Gullickson sought a disorderly conduct restraining order against Kline based upon his actions at a city council meeting and upon several incidents involving Kline and Gullickson's husband, Gary.

[¶ 3] In her affidavit in support of the restraining order, Gullickson alleged Kline disrupted the June 2, 2003, city council meeting by asking questions, requesting copies of ordinances, telling council members they should resign so more qualified people could serve, making a racially insensitive remark, and staring at Gullickson with "little beady eyes." Gullickson's remaining allegations involved three incidents between her husband and Kline regarding Gary Gullickson driving his semi-truck through town past Kline's house. Gullickson alleged Kline twice came into the Gullicksons' yard and shouted obscenities at her husband, and on one of these occasions made a sexually disparaging remark about her to her husband. She also alleged Kline on one occasion ran from his yard, jumped on the running board of Gary Gullickson's semi as it passed by, pounded on the window, and hollered "like a crazed man."

[¶ 4] The trial court issued a temporary disorderly conduct restraining order, and a hearing was held on July 2, 2003. At the hearing, Kline disputed most of Gullickson's allegations. He denied disrupting the city council meeting, testifying that he did not glare at Gullickson at the meeting, asked only for copies of the materials being handed to the council members, and asked questions when certain topics were discussed. Regarding the incident in front of his house, Kline testified he was walking across the street when Gary Gullickson failed to stop at a stop sign and hit Kline, and when Gary Gullickson finally stopped his truck Kline stepped up on the running board. He denied hitting the window with his fist or yelling at Gary Gullickson. Regarding the two incidents in the Gullicksons' yard, Kline testified that he went to the Gullicksons' house after Gary Gullickson had again driven his truck through the stop sign near Kline's house and that he went to ask Gary Gullickson if he would take the truck route through town or park his truck elsewhere. Kline claimed that Gary Gullickson repeatedly yelled profanities at him. Kline also stated that he made a sexual remark about Jody Gullickson only after Gary Gullickson had dropped his pants and exposed himself to Kline.

[¶ 5] The district court issued a disorderly conduct restraining order dated July 2, 2003, to be in effect for two years. Kline was ordered to have no contact with Gullickson and to not come within 100

yards of Gullickson or her home. Kline has appealed.

## II

[¶ 6] Kline asserts the trial court committed numerous procedural errors which denied him a full and fair hearing and violated due process.

[¶ 7] Under N.D.C.C. § 12.1–31.2–01, a person who has been the victim of disorderly conduct may petition for a disorderly conduct restraining order. The petition must allege facts showing that the respondent has engaged in disorderly conduct, and must be accompanied by an affidavit under oath stating the specific facts and circumstances supporting the relief sought. N.D.C.C. § 12.1–31.2–01(3). The court may issue a temporary restraining order, and must then schedule a full hearing on the petition to be held within fourteen days of issuance of the temporary order. N.D.C.C. § 12.1–31.2–01(4), (5). If, after the hearing, the court finds there are reasonable grounds to believe the respondent has engaged in disorderly conduct, it may grant a disorderly conduct restraining order effective for up to two years. N.D.C.C. § 12.1–31.2–01(5), (6).

[¶ 8] This Court has characterized the procedure under the statute as a "special summary proceeding," intended to "quickly and effectively combat volatile situations before any tragic escalation." *Skadberg v. Skadberg*, 2002 ND 97, ¶ 13, 644 N.W.2d 873. However, we have also noted the significant restraint placed upon the respondent's liberty and the stigma resulting from a disorderly conduct restraining order. *See Tibor v. Lund*, 1999 ND 176, ¶ 17, 599 N.W.2d 301. The order typically restricts the respondent's right to be in certain places and subjects the respondent to criminal penalties and arrest without a warrant. *See* N.D.C.C. § 12.1–32.1–01(7), (8). In addition, copies of the order are sent to local law enforcement agencies, which are authorized to disseminate the information to all of their officers. *See* N.D.C.C. § 12.1–31.2–01(9); *Tibor*, at ¶ 17. Clearly these interests create a due process right to a full and fair hearing before issuance of a disorderly conduct restraining order beyond the fourteen-day temporary order.

[¶ 9] We have reviewed the record in this case and we conclude the procedures employed by the trial court, when considered as a whole, deprived Kline of a full and fair hearing and violated his right to due process. We will briefly highlight some of the procedural problems which occurred.

## A

[¶ 10] At the beginning of the hearing the court swore in Gullickson, who was not represented by counsel, but had her remain at counsel table rather than take the witness stand. The court then asked Gullickson if everything in her affidavit was true. Gullickson responded yes. The court then asked if Gullickson wished to add anything. Kline's counsel objected on due process grounds, arguing they hadn't received notice of other allegations and requesting a continuance if new matters were raised. The court overruled Kline's objection, and Gullickson testified her husband had told her about two additional incidents between himself and Kline. She also testified about an incident where Kline allegedly took photographs of Gullickson's mother while she was stopped at a stop sign after leaving Gullickson's house. Kline raised hearsay objections to this testimony and portions of Gullickson's affidavit, and requested that Gullickson and the other hearsay "witnesses" be called to the stand to testify about these incidents. The court overruled the objections.

[¶ 11] There were numerous problems with this procedure. The statute gives the respondent the right to a "full hearing," not merely one based upon the affidavits alone. We recognize that in *Skadberg* we allowed a procedure which was short of a full-blown trial. In *Skadberg,* both parties had presented affidavits, and the respondent was given a full opportunity to cross-examine the petitioner. When asked if he had anything further to present, the respondent indicated he did not. Nor did the respondent at any time during the hearing object to the procedure employed at the hearing. We concluded that the respondent had received a "full hearing" under the statute. *Skadberg,* 2002 ND 97, ¶ 14, 644 N.W.2d 873.

█ [¶ 12] *Skadberg* is clearly distinguishable from this case. Kline was not provided a meaningful opportunity to cross-examine Gullickson. Furthermore, much of the material in her affidavit and her "testimony" at trial was inadmissible hearsay, not based upon her personal knowledge. By failing to require other witnesses with personal knowledge of the incidents to testify, Kline had no opportunity to challenge their versions of these incidents. Finally, by allowing Gullickson to raise new allegations without notice to Kline, Kline was not allowed any meaningful opportunity to challenge or rebut that evidence. The right to a fair hearing comporting with due process includes reasonable notice or opportunity to know of the claims of opposing parties and the opportunity to rebut them. *Flink v. North Dakota Workers Compensation Bureau,* 1998 ND 11, ¶ 16, 574 N.W.2d 784; *Municipal Servs. Corp. v. State,* 483 N.W.2d 560, 564 (N.D.1992).

[¶ 13] The hearsay nature of the evidence about many of these incidents raises a further, more fundamental problem under the statute. The statute provides that the applicant for a disorderly conduct restraining order must be the "victim" of the prior disorderly conduct, or the parent or guardian of a minor who has been a victim. N.D.C.C. § 12.1–31.2–01(2). "Disorderly conduct" is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person." N.D.C.C. § 12.1–31.2–01(1). Thus, the conduct must be intended to adversely affect a person, and the statute does not authorize one person to seek a restraining order based upon disorderly conduct directed at some other person. In this case, the incidents involving Gullickson's husband and mother could not provide the basis for a disorderly conduct restraining order by Gullickson, because the conduct was not directed toward her and she therefore was not the "victim" of the alleged disorderly conduct. In fact, in all of these incidents except one there is no evidence Gullickson was present when the conduct occurred. She stated that she was in her home when one of the incidents between her husband and Kline occurred in her yard, and that she went to the door in time to hear Kline make a sexually disparaging remark about her to her husband. However, the remark was not directed toward her, and could not have been "intended to adversely affect" her "safety, security, or privacy." If Kline's actions during the incidents with Gullickson's husband or mother constituted disorderly conduct, her husband and mother, respectively, were the "victims," and only they could seek a restraining order based upon that conduct.

**B**

[¶ 14] We are also concerned about the abbreviated length of the hearing. Although the transcript does not delineate the length of time of the hearing, the entire transcript is only eighteen pages

long. In the middle of Kline's testimony, the court interrupted Kline's counsel and cut short the hearing:

> THE COURT: Excuse me. Mr. McCabe, I don't have an infinite amount of time for this hearing, so what I'm going to do is allow you to just tell me in the form of an offer of proof what the rest of any evidence you're going to present is, cause I've got lots of other business on my calendar here, so.

Kline's counsel was thus required to cut short his examination of Kline, and allowed to make only a very brief summary of the expected testimony of Kline's wife. The court did not allow closing arguments, and when Kline's counsel requested, "If I could just get a one last ten second thing for the record," the court responded, "No, we're done," and closed the record.

 [¶ 15] We recognize that a trial court has broad discretion over the conduct of a trial or hearing, including limitations on the number of witnesses. *See Selzler v. Selzler*, 2001 ND 138, ¶ 10, 631 N.W.2d 564; *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573, 580 (N.D.1991); *Ward v. Shipp*, 340 N.W.2d 14, 18 (N.D.1983); *Merrill Iron & Steel, Inc. v. Minn–Dak Seeds, Ltd.*, 334 N.W.2d 652, 658 (N.D. 1983); *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 101 (N.D.1977). We have cautioned, however, that the court must exercise that discretion in a manner that best comports with substantial justice. *Selzler*, at ¶ 10; *Slaubaugh*, at 580; *Ward*, at 18. As this Court explained in *Ward*, at 18:

> We are mindful of the necessity of the trial court having complete control over the proceedings before it, and of the broad discretion placed in the trial court in conducting such proceedings, but this discretion must be exercised in a manner which best comports with substantial justice. The court must balance judicial economy and convenience with the parties' right to present all of the evidence on all of the relevant issues. Trial courts should not arbitrarily disallow testimony that is critical to the case, particularly when the only objection is a slight inconvenience to the court or to other parties.

In addition, procedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case. *St. Claire v. St. Claire*, 2004 ND 39, ¶ 6, 675 N.W.2d 175; *Walbert v. Walbert*, 1997 ND 164, ¶ 9, 567 N.W.2d 829; *In re Adoption of J.W.M.*, 532 N.W.2d 372, 377 (N.D.1995).

[¶ 16] We reiterate that a trial court will ordinarily have broad discretion over the conduct of a trial or hearing. We also recognize that the court may impose reasonable restrictions on the length of the hearing or the number of witnesses allowed. However, when the court employs a procedure which fails to afford a party a meaningful and reasonable opportunity to present evidence on the relevant issues, the court has abused its discretion and violated the party's due process rights.

[¶ 17] We are particularly concerned with the trial court's mistaken belief that allowing counsel to make an offer of proof of what the other evidence would have been somehow substitutes for live testimony by a witness. The primary purpose of an evidentiary hearing is to allow the parties to present evidence through testimony and allow the factfinder to hear and view the witnesses, assess their credibility, and thereby resolve factual disputes. The parties presented widely divergent factual allegations and versions of the various incidents, and the case turned entirely upon the credibility of the witnesses. Requiring one party to present evidence through counsel's abbreviated offer of proof, rather than live testimony of witnesses, was

meaningless under these circumstances and provided no opportunity for the trial court to assess the credibility of the witnesses and to fairly resolve the factual disputes.

## C

[¶ 18] Kline also argues the court erred in failing to specifically address his claim that some of his conduct constituted constitutionally protected activity.

[¶ 19] Under N.D.C.C. § 12.1–31.2–01(1), "[d]isorderly conduct does not include constitutionally protected activity." Section 12.1–31.2–01(5)(d) N.D.C.C., requires the court to determine the validity of such a constitutional claim before granting a disorderly conduct restraining order:

> If a person claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity.

[¶ 20] Kline argued at the hearing that some of his conduct was constitutionally protected activity. The trial court did not, however, explain its rationale for issuing the disorderly conduct restraining order or address the constitutional claims orally at the hearing, in written findings, or in the disorderly conduct restraining order itself. The court used a pre-printed, fill-in-the-blank form for the restraining order. We are unable to discern the basis for its decision to issue the restraining order, and, in particular, we cannot discern whether the court considered and determined the validity of Kline's constitutional claims. The trial court should have explained if it disregarded evidence of constitutionally protected activity under N.D.C.C. § 12.1–31.2–01(5)(d) or if it rejected Kline's constitutional claims.

[¶ 21] We are particularly concerned about the court's failure to address Kline's constitutional claims because the restraining order issued by the court appears to raise related constitutional issues. On its face, the order prohibits Kline from coming within 100 yards of Gullickson. This would effectively preclude Kline from attending city council meetings.

## III

[¶ 22] Our primary concern in this case has been the composite effect of the numerous procedural problems. We have held that "[a] person is denied due process or a fair hearing when the defects in the hearing process might lead to a denial of justice." *Stutsman County v. Westereng*, 2001 ND 114, ¶ 8, 628 N.W.2d 305; *Hoffman v. North Dakota Workers Compensation Bureau*, 1999 ND 66, ¶ 12, 592 N.W.2d 533; *Carlson v. Job Service North Dakota*, 548 N.W.2d 389, 395 (N.D.1996). The overall tenor and tone of the hearing indicates that Kline was denied a meaningful and reasonable opportunity to present his evidence and challenge Gullickson's allegations, resulting in a denial of justice. Under these circumstances, we conclude Kline was denied the full and fair hearing mandated by N.D.C.C. § 12.1–31.2–01 and due process.

[¶ 23] We reverse the disorderly conduct restraining order and remand for a new hearing.

[¶ 24] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

I concur in the result. MARY MUEHLEN MARING.