2016 ND 71

**Kayla RATH, Petitioner**

v.

**Mark RATH, Respondent
and Appellant.**

No. 20150133.

Supreme Court of North Dakota.

March 28, 2016.

Kayla Rath, petitioner; no appearance.

Mark A. Rath, self-represented, Bismarck, ND' respondent and appellant; on brief.

VANDE WALLE, Chief Justice.

[¶ 1]  Mark Rath appealed from a disorderly conduct restraining order. We reverse and remand for proceedings consistent with this opinion.

I

[¶ 2]  This appeal represents the latest dispute between Mark Rath and Kayla Rath. See, e.g., Rath v. Rath, 2015 ND 22, 861 N.W.2d 172; Rath v. Rath, 2014 ND 171, 852 N.W.2d 377; Rath v. Rath, 2013 ND 243, 840 N.W.2d 656. On April 17, 2015, Kayla Rath petitioned for a disorder-

ly conduct restraining order against Mark Rath, citing a litany of conduct purportedly rising to the level of disorderly conduct. These allegations included: Mark Rath called his children nearly twenty times in one night, Mark Rath used foul language towards Kayla Rath, Mark Rath said he had a business associate seek Kayla Rath's phone records, Mark Rath reported Kayla Rath to authorities out of concern she may be illegally receiving government benefits, and other miscellaneous conduct.

[¶ 3] The district court held a hearing on the petition. At the outset of the hearing, the court asked Kayla Rath, who was under oath and represented by counsel, if the information and allegations contained in her petition and accompanying affidavit were correct. She answered in the affirmative and offered no other evidence or testimony in support of her petition at the hearing. According to the hearing transcript, her substantive participation ended moments into the hearing.

[¶ 4] The remainder of the hearing consisted of Mark Rath, who was self-represented, attempting to refute Kayla Rath's allegations. Mark Rath argued Kayla Rath misrepresented the situation, his actions were reasonable, and his conduct was constitutionally protected. To corroborate these arguments, Mark Rath wanted to call Kayla Rath as a witness. The district court denied this request, concluding Mark Rath could not directly question Kayla Rath out of concern for safety, to minimize conflict between the parties, and in order to keep the hearing focused on the factual issues necessary to determine whether to grant Kayla Rath's petition. Instead, the court allowed Mark Rath to identify any questions he wanted to ask Kayla Rath and, if the court deemed the questions appropriate, the court would ask Kayla Rath the questions.

The court determined Mark Rath failed to identify any appropriate questions, and the court did not ask, and Kayla Rath did not answer, any questions during the hearing.

The court and Mark Rath engaged in the following exchange:

MR. RATH: I'm not being given a full evidentiary hearing.

THE COURT: I have heard your testimony.

MR. RATH: Okay. But there has to be cross-examination.

THE COURT: I've asked you what questions you would ask her and there isn't anything that would be particularly helpful to me in this matter. Now I want to give you an opportunity to tell me what you think the order should say.

Mark Rath thereafter concluded his argument after presenting other evidence.

[¶ 5] After the hearing, the district court concluded Mark Rath's conduct consisted of unwanted words and actions intended to adversely affect Kayla Rath's safety, security, and privacy. In doing so, the court found Mark Rath's abusive language and repeated calls adversely impacted Kayla Rath's security. The court also found Mark Rath's attempt to secure Kayla Rath's phone records adversely impacted her privacy interests. The court further found Mark Rath's reporting of Kayla Rath to authorities for unlawful receipt of benefits, without all relevant information, was a thinly veiled attempt to impact her privacy. The district court concluded Mark Rath's actions constituted disorderly conduct. The court granted Kayla Rath's petition and entered a disorderly conduct restraining order prohibiting Mark Rath from engaging in physical contact or disorderly conduct towards Kayla Rath until April 30, 2017.

## II

■ [¶ 6] A person claiming to be a victim of disorderly conduct may petition for a disorderly conduct restraining order. N.D.C.C. § 12.1–31.2–01(2). The petition must allege facts showing the respondent "engaged in disorderly conduct. An affidavit made under oath stating the specific facts and circumstances supporting the relief sought must accompany the petition." N.D.C.C. § 12.1–31.2–01(3). Disorderly conduct consists of "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person." N.D.C.C. § 12.1–31.2–01(1). If the petitioner alleges reasonable grounds exist to believe the respondent engaged in disorderly conduct, the court may grant a temporary disorderly conduct restraining order pending a full hearing on the petition, which must be held within fourteen days of the court issuing the temporary order. N.D.C.C. § 12.1–31.2–01(4), (5)(c). If, after the hearing, the court finds reasonable grounds to believe the respondent committed disorderly conduct, it may grant a disorderly conduct restraining order for a period of up to two years. N.D.C.C. § 12.1–31.2–01(5), (6). Reasonable grounds to believe a respondent engaged in disorderly conduct exist "when facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed." *Svedberg v. Stamness*, 525 N.W.2d 678, 682 (N.D.1994). Section 12.1–31.2–01(8), N.D.C.C., further provides:

> If the respondent knows of an order issued under [N.D.C.C. § 12.1–31.2–01(4) or (5)], violation of the order is a class A misdemeanor. If the existence of an order issued under [N.D.C.C. § 12.1–31.2–01(3) or (4)] can be verified by a peace officer, the officer, without a warrant, may arrest and take into custody an individual whom the peace officer has probable cause to believe has violated the order.

### A

■ [¶ 7] Before a court grants a petition for a disorderly conduct restraining order, the court must conduct a full hearing. N.D.C.C. § 12.1–31.2–01(4). This hearing is a special summary proceeding designed to "quickly and effectively combat volatile situations before any tragic escalation." *Skadberg v. Skadberg*, 2002 ND 97, ¶ 13, 644 N.W.2d 873. The hearing's primary purpose "is to allow the parties to present evidence through testimony and allow the factfinder to hear and view the witnesses, assess their credibility, and thereby resolve factual disputes." *Gullickson v. Kline*, 2004 ND 76, ¶ 17, 678 N.W.2d 138. Because the hearing's primary purpose is to assist the court in resolving factual disputes, the petitioner must generally "prove his petition through testimony, rather than by affidavits alone, with an opportunity for cross-examination." *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 23, 705 N.W.2d 836; *but see Cusey v. Nagel*, 2005 ND 84, ¶ 15, 695 N.W.2d 697 (observing "[w]e have held that a trial court conducts a 'full hearing' on a disorderly conduct restraining order petition by accepting affidavits and allowing cross-examination, at least when the parties raise no objection to the form of the hearing.").

[¶ 8] At the hearing, the district court asked Kayla Rath whether she prepared the application for the restraining order and whether the information contained therein was true and correct. Kayla Rath responded in the affirmative. After this exchange, the hearing transcript indicates the district court informed Mark Rath it would allow him to respond to the allegations set forth in the petition. Mark Rath

asked the court if he could call Kayla Rath as a witness. The court refused to allow him to cross-examine Kayla Rath directly. The court instead instructed Mark Rath to identify questions he would ask Kayla Rath. If he identified any relevant questions, the court would then pose the questions to Kayla Rath. In its order granting the restraining order, the court concluded this was necessary to avoid conflict between the parties, ensure the parties' safety, and to keep the hearing focused on the issues in order to determine whether to grant the disorderly conduct restraining order.

[¶ 9] Mark Rath argues this procedure violated due process and denied him the full hearing to which he was entitled. Because of the seriousness and social stigma associated with a restraining order, "due process is required throughout the restraining order proceedings." *Holbach v. Dixon*, 2007 ND 60, ¶ 7, 730 N.W.2d 613. In ensuring the court exercises this discretion in a manner comporting with due process, "[t]he court must balance judicial economy and convenience with the parties' right to present all of the evidence on all of the relevant issues." *Gullickson*, at ¶ 15 (quoting *Ward v. Shipp*, 340 N.W.2d 14, 18 (N.D.1983)). In balancing these interests, the district "court is given discretion in how it conducts a trial or hearing. Therefore, the decision of the district court will not be reversed unless the district court abused its discretion." *Wetzel*, at ¶ 22 (internal citations omitted). "A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably." *Id.* (quoting *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215).

[¶ 10] Due process requires an opportunity for cross-examination in restraining order proceedings. Direct questioning by the respondent is the normal and preferred method of allowing such cross-examination. *See Cusey*, at ¶ 15 (noting the "better practice is to allow the petitioner to present evidence through his own or other persons' testimony, rather than through the affidavit accompanying the petition."). If the judge deviates from this practice by allowing questions to be asked through the judge, sufficient findings justifying this procedure must be placed on the record. With the significant interests at stake in determining whether to grant a restraining order, due process dictates a decision to deviate from standard trial practices requires more than conclusory justifications. We have recognized this requirement as adhering to due process in other contexts. *See, e.g., State v. Aguero*, 2010 ND 210, ¶¶ 10, 12, 791 N.W.2d 1 (noting due process requires a court to explain what circumstances require a prisoner to be visibly restrained during trial, including why less restrictive alternatives are ineffective to address the court's concerns).

[¶ 11] After reviewing its order, we are concerned by the district court's lack of explanation for the necessity of the procedure used here. While the court cited ensuring safety, minimizing conflict, and limiting the hearing to the pertinent issues before the court as justifying this procedure, the court did not elaborate on what facts or circumstances justified these concerns in this instance. Without further specificity, these conclusory justifications are insufficient to justify deviating from standard trial practices in restraining order proceedings because they leave us to speculate about the specific circumstances justifying denying Mark Rath the opportunity to directly question Kayla Rath. This lack of explanation raises the question of whether the court may have used a less restrictive means of achieving its desired ends, for example, allowing Mark Rath to

directly question Kayla Rath but disallowing irrelevant or inflammatory questions when appropriate. Accordingly, we conclude the district court abused its discretion in not allowing Mark Rath to directly cross-examine Kayla Rath without adequately explaining, on the record, its reasons for not allowing him to do so. We therefore reverse and remand for a new hearing. If, at the new hearing, the district court does not allow Mark Rath to directly cross-examine Kayla Rath, the court must specifically set forth its reasons for not allowing direct cross-examination and provide Mark Rath with an adequate opportunity to identify his questions.

### B

[¶ 12] Mark Rath argues the district court erred by not addressing his constitutional arguments. Under N.D.C.C. § 12.1–31.2–01(1), "[d]isorderly conduct does not include constitutionally protected activity." "If a person claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity." N.D.C.C. § 12.1–31.2–01(5)(d). A respondent's claim some or all of the conduct purportedly constituting disorderly conduct was constitutionally protected "requires the court to determine the validity of . . . [the] constitutional claim before granting a disorderly conduct restraining order . . . ." *Gullickson*, at ¶ 19. If a court issues a disorderly conduct restraining order without addressing the constitutional claims, the court generally commits a reversible error. *Id.* at ¶ 21; *Hutchinson v. Boyle*, 2008 ND 150, ¶ 9, 753 N.W.2d 881. This error, however, will not necessarily warrant reversal if we can say with certainty the court would have issued the restraining order based solely upon the uncontested conduct. *See Hutchinson*, at ¶ 9.

[¶ 13] Here, Mark Rath claimed some of his foul language and his multiple phone calls were constitutionally protected because they did not constitute unprotected fighting words and concerned his ability to parent his children. He made these claims both in his brief in opposition to the petition and at the petition hearing. The district court made no finding, either at the hearing or in its order, as to whether it accepted or rejected his claims. On remand, the court should address if it disregarded Mark Rath's claims. If the court finds the claims to be constitutionally protected, the conduct could not constitute disorderly conduct under N.D.C.C. § 12.1–31.2–01(1). We therefore remand for the district court to consider Mark Rath's constitutional claims in deciding whether reasonable grounds exist to believe he engaged in disorderly conduct, as defined by N.D.C.C. § 12.1–31.2–01(1).

### III

[¶ 14] We do not address Mark Rath's other arguments because they are unnecessary to this decision. We reverse and remand for further proceedings consistent with this opinion.

[¶ 15] JOEL D. MEDD, S.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS and LISA FAIR McEVERS, JJ., concur.

[¶ 16] The Honorable JOEL D. MEDD, S.J., sitting in place of SANDSTROM, J., disqualified.