2004 ND 105

**Phyliss BAKER, Petitioner and Appellee**

v.

**Gary MAYER, Respondent and Appellant.**

**No. 20030324.**

Supreme Court of North Dakota.

June 3, 2004.

William Robert Hartl, Rugby, N.D., for respondent and appellant.

Phyliss Baker (no appearance).

MARING, Justice.

[¶ 1]   Gary Mayer appeals from a disorderly conduct restraining order directing him to have no contact with Phyliss Baker. We reverse, concluding the trial court abused its discretion when it found reasonable grounds existed for a disorderly conduct restraining order against Mayer.

I

[¶ 2]   Baker broke off a romantic relationship with Mayer approximately three years before she petitioned the trial court for a restraining order in July 2003, based upon his actions over the prior year.

[¶ 3]   In Baker's Petition for Disorderly Conduct Restraining Order, she alleged Mayer followed her, drove by her home slowly many times, and looked in her home. She submitted a list of dates and times she alleged Baker drove by her home. This list documented that Mayer drove by once on July 20, 2003, once on July 22, 2003, and twice on July 24, 2003. The trial court issued a temporary disorderly conduct restraining order on July 25, 2003, and a hearing on the petition was held on August 20, 2003.

[¶ 4]   At the hearing, Baker did not cross examine Mayer, but she did offer additional testimony regarding Mayer's actions. She testified that Mayer stopped her while in her car at a stop sign to ask her if she wanted to use his vehicle to move, ate at her place of business, asked if she was working or for her work schedule, made unwanted contact through the Internet, and phoned her.

[¶ 5]   Mayer testified that he was not following Baker. He testified that he kept a vehicle in a garage approximately one block from Baker's home and that he would drive by her home to park there and to run the vehicle periodically. He testified that the street has yield signs, that he would look both ways, and that unfortunately her home was on a corner which caused him to look at her home. Mayer testified he could submit to the trial court receipts establishing he was out of town during one day Baker alleged he drove by her home. The trial court stated, "I accept your word for that," referring to his evidence. Mayer testified that he eats out for almost all his lunches and admitted that some were eaten at Baker's workplace, but that he was not trying to follow her. Finally, Mayer testified that prior to the temporary restraining order, he did not know Baker wanted no contact with him.

[¶ 6] On July 2, 2003, the trial court issued a disorderly conduct restraining order, ordering Mayer to have no contact with Baker, her property, or her workplace for one year. Mayer appeals the disorderly conduct restraining order. Baker did not submit a brief in this appeal nor did she appear at oral argument before this Court.

II

[¶ 7] A trial court has the discretion to grant a disorderly conduct restraining order, and we will not reverse that decision unless the trial court clearly abused its discretion. *Weininger v. Grzeskowiak*, 2003 ND 80, ¶ 2, 664 N.W.2d 516, 2003 WL 21511835.

[¶ 8] A victim of disorderly conduct may petition a trial court for a disorderly conduct restraining order in the manner provided under N.D.C.C. § 12.1–31.2–01. A petition for a disorderly conduct restraining order must give the name of the alleged victim, the name of the person allegedly engaged in disorderly conduct, and must allege that the person engaged in disorderly conduct. N.D.C.C. § 12.1–31.2–01(3). The alleged victim must include an affidavit, under oath, containing specific facts and circumstances supporting the need for relief. *Id.*

[¶ 9] If the petition alleges reasonable grounds for relief, the trial court may issue a temporary restraining order. N.D.C.C. § 12.1–31.2–01(4). A hearing regarding the petition must be held no later than fourteen days after the trial court issued a temporary restraining order. N.D.C.C. § 12.1–31.2–01(5)(c). If, after the hearing, the trial court finds reasonable grounds that the person engaged in disorderly conduct, it may order a disorderly conduct restraining order lasting up to two years. N.D.C.C. § 12.1–31.2–01(5)(d), (6).

[¶ 10] Mayer does not argue that the trial court or the alleged victim failed to use the correct procedure under N.D.C.C. § 12.1–31.2–01. He argues the facts are not sufficient as a matter of law for issuing a one-year disorderly conduct restraining order against him.

III

[¶ 11] Mayer argues Baker did not satisfy her burden to show reasonable grounds to believe he engaged in disorderly conduct, as required by N.D.C.C. § 12.1–31.2–01(5). Additionally, Mayer argues Baker failed to show that he intended to adversely affect her safety, security, or privacy or that his actions actually adversely affected her safety, security, or privacy. Finally, Mayer argues there was no evidence that Baker was fearful, intimidated, or that his actions had become a pattern of intimidation.

[¶ 12] Disorderly conduct is defined in N.D.C.C. § 12.1–31.2–01(1) as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person. Disorderly conduct does not include constitutionally protected activity." An alleged victim of disorderly conduct must show more than the person's actions are unwanted; she must show those actions were intended to adversely affect her safety, privacy, or security. *Skadberg v. Skadberg*, 2002 ND 97, ¶ 6, 644 N.W.2d 873 (quoting *Tibor v. Lund*, 1999 ND 176, ¶ 9, 599 N.W.2d 301).

[¶ 13] We have held that reasonable grounds for a disorderly conduct restraining order is "synonymous with probable cause." *Tibor*, 1999 ND 176, ¶ 7, 599 N.W.2d 301. We have also held that under N.D.C.C. § 12.1–31.2–01, reasonable grounds exist for a disorderly conduct restraining order when a person of reasonable caution would believe the facts and

circumstances show that the person committed disorderly conduct. *Tibor*, at ¶ 7 (quoting *Svedberg v. Stamness*, 525 N.W.2d 678, 682 (N.D.1994)). "To support a request for a disorderly conduct restraining order, the petitioner must present evidence of specific acts or threats constituting disorderly conduct, and "subjective fear" is not sufficient to support an order." *Tibor*, at ¶ 7.

[¶ 14] We have recognized the ramifications of a disorderly conduct restraining order to the person alleged to have committed disorderly conduct. *See Gullickson v. Kline*, 2004 ND 76, ¶ 8, 678 N.W.2d 138. A disorderly conduct restraining order significantly restrains a person's liberty. *Id.* It totally restricts the right to be in certain places and partially restricts the right to be in other places because generally the person must not go within a certain number of feet of the victim. *Id.* Further, stigma in the community may result due to the nature of the charge. *Id.*

[¶ 15] We have repeatedly stated a trial court is in a better position to judge the credibility and demeanor of the witness and to weigh the evidence, and "we will generally defer to its expertise." *Skadberg*, 2002 ND 97, ¶ 9, 644 N.W.2d 873 (quoting *Svedberg*, 525 N.W.2d at 682).

[¶ 16] A person who petitions for a disorderly conduct restraining order must allege specific facts or threats. *Tibor*, 1999 ND 176, ¶ 7, 599 N.W.2d 301. In this case, the majority of Baker's allegations were general. For example, Baker generally alleged that Mayer followed her, ate at her place of business, asked if she was working or for her work schedule, made unwanted contact via the computer, and phoned her. She did not give any specific dates or times for these incidents. She did not specify who Mayer asked about her work schedule or when he ate at the restaurant.

[¶ 17] The only specific facts Baker alleged were the four times she documented that Mayer drove by her home and that he stopped her to offer use of his truck to move. Baker documented that Mayer drove by her home once on July 20, 2003, once on July 22, 2003, and twice on July 24, 2003. The trial court indicated it believed Mayer when he testified he had receipts indicating he was out of town on one of these dates, bringing the alleged number of times he drove by Baker's home to three. In addition, the only fact Baker alleged which might show an intent to adversely affect her safety, security, or privacy was Mayer asking other employees about her work schedule. We have said that "subjective fear" is not enough, and here, Baker did not even allege any fear of Mayer or his actions.

[¶ 18] Mayer testified he kept a vehicle in a garage approximately one block from Baker's home which he said explained his passing by her home. He testified the street has yield signs so when he looked both ways he would look at her home, which is on the corner. Mayer submitted a receipt showing he was out of town during one of the four times Baker alleged he drove by her home. He testified he did offer to let Baker use his truck; he did eat at her workplace, but that he thought she worked in housekeeping not in the restaurant; and he was not trying to follow her. He testified he only once asked a waitress about whether Baker was working. Baker simply did not satisfy her burden to prove, through specific facts and circumstances, that Mayer engaged in disorderly conduct.

[¶ 19] Baker testified Mayer's actions were unwanted, and the trial court concluded they were unwanted, but we have said merely unwanted actions are not sufficient to justify a disorderly conduct restraining order. *Skadberg*, 2002 ND 97,

¶ 6, 644 N.W.2d 873 (quoting *Tibor,* 1999 ND 176, ¶ 9, 599 N.W.2d 301). Baker must show Mayer's actions were intended to affect her safety, security, or privacy.

[¶ 20]   We are concerned about Mayer inquiring as to Baker's work schedule. That fact may be evidence of intent to harass; however, Baker admits the work schedule would not contain her hours as she is an employee who floats wherever help is needed. Further, Baker did not establish a pattern of intrusive behavior that is necessary to support a request for a restraining order.

[¶ 21]   Based on the petition and all the testimony in this case, we conclude a person of reasonable caution would not believe that Mayer's actions constituted the offense of disorderly conduct or that he intended his actions to affect Baker's safety, security, or privacy. Therefore, the trial court abused its discretion when it ordered a disorderly conduct restraining order against Mayer.

### IV

[¶ 22]   We reverse the one-year disorderly conduct restraining order against Mayer.

[¶ 23] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.