2005 ND 84

**Keith CUSEY, Petitioner and Appellee,**

v.

**Trayce NAGEL, Respondent and Appellant.**

No. 20040241.

Supreme Court of North Dakota.

May 3, 2005.

Keith Cusey, petitioner and appellee; no appearance.

Chad R. McCabe, Vinje Law Firm, Bismarck, ND, for respondent and appellant.

MARING, Justice.

[¶ 1] Trayce Nagel appealed from a disorderly conduct restraining order directing that she have no contact with Keith Cusey for a two-year period. Because we conclude the trial court abused its discretion in finding reasonable grounds existed for the disorderly conduct restraining order, we reverse.

I

[¶ 2] Cusey dated Nagel from August 2003 until March 2004, when Cusey began dating another woman. On April 22, 2004, Cusey petitioned for a disorderly conduct restraining order. In the sworn affidavit accompanying the petition, Cusey said:

March 2, 2004 I started dating Kyle Stoppler, and on March 5, 2004 Trayce Nagel showed up at my place of employment yelling and screaming at me and saying how she hoped the sex was good and she was going to go into Kyle's house and talk to her and tell her things about me. Trayce also went out to my house while I was not there. She has done this many times. Trayce has also called Kyle's house leaving messages on her answering machine[ ], and she continues to call my place of employment leaving messages for me to call her. April 3, 2004 Trayce drove past Kyle's house 8 to 10 times that day very slow, staring at the house when I was not their [sic]. Trayce also calls my best friend Kevin Barr on a constant basis telling him lies about me and Kyle, and tells him she loves me and wants me back. Thursday, April 8, 2004, Kyle and I went over to Braddock to shoot pool, as this is pool night. We walked in the door only to find Trayce their [sic] with Laura Lee. She sat their [sic] and stared at us the whole night. Some of the dates she called him are March 5, 2004, April 6, 2004, and April 9, 2004. On April 9, 2004, Trayce called Kevin and told him that Kyle wanted to beat her up at pool night. This is not true. Kyle does not even know Trayce, and had no intentions of beating Trayce up. This is her sick, twisted way of thinking. She is still upset, because I broke up with her. I tried breaking up with Trayce at [ ] least 4 times, and she would not take the hint. Trayce is also friends with Laura Lee from Hazelton. She comes to Hazelton on a weekly basis to try and find out information on me and Kyle. I believe Trayce to be a vengeful[ ] person, and believe she is capable of doing

worse things, and I would like this to be stopped.

The trial court granted an ex parte temporary disorderly conduct restraining order pending a hearing on Cusey's petition.

[¶ 3] In response to the petition, Nagel moved to dismiss and submitted two affidavits in which she denied some of Cusey's allegations and claimed Cusey had filed the petition in retaliation for her filing a small claims court action against him on March 12, 2004, seeking to recover money she claimed he owed her. Nagel acknowledged going to the farm where Cusey worked, but said although "I was upset with tears, there was no yelling and screaming." Nagel claimed that after leaving the farm, she once called Cusey at work and had a brief discussion with him, but denied calling after that and leaving messages. Nagel claimed Cusey called her on the morning of the small claims court hearing and offered to drop the petition for a disorderly conduct restraining order if she dropped the small claims court action. Nagel also claimed Cusey asked her to not attend the small claims court hearing. Nagel refused. Cusey did not appear, and Nagel was awarded $673.38 in her small claims court action against Cusey.

[¶ 4] During the brief hearing on the petition, the trial court sustained Nagel's objection to Cusey's testimony about incidents not contained in his affidavit and struck hearsay statements from the affidavit. Nagel testified that she went to the farm where Cusey worked to ask him about his new girlfriend and to tell him she wanted him to pay her the money he owed her. Nagel testified this conversation did not occur in the presence of others. Nagel also testified about Cusey's phone conversation with her on the morning of the small claims court hearing. Nagel's attorney then cross-examined Cusey regarding his allegations. At the conclusion of the hearing, the trial court granted the petition:

Based on the evidence presented, I believe that it's been established that the respondent has committed disorderly conduct, specifically yelling and screaming at the petitioner at his place of employment, and continuing to call his place of employment and leave messages. I believe that [this] conduct[ ][is] adversely affecting the privacy of the petitioner; therefore, the Court will issue a disorderly conduct restraining order that will be in effect until June 30th, 2006.

Nagel appealed.

II

[¶ 5] Nagel argues the trial court erred in granting the disorderly conduct restraining order.

[¶ 6] A trial court may grant a disorderly conduct restraining order if the court finds "there are reasonable grounds to believe that the respondent has engaged in disorderly conduct." N.D.C.C. § 12.1–31.2–01(5)(d). *See also Skadberg v. Skadberg*, 2002 ND 97, ¶ 5, 644 N.W.2d 873. Disorderly conduct is defined in N.D.C.C. § 12.1–31.2–01(1) as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person. Disorderly conduct does not include constitutionally protected activity." The term "reasonable grounds" is synonymous with "probable cause." *Tibor v. Lund*, 1999 ND 176, ¶ 7, 599 N.W.2d 301. Reasonable grounds exist "when facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed." *Svedberg v. Stamness*, 525 N.W.2d 678, 682 (N.D.1994).

[¶ 7] A person who petitions for a disorderly conduct restraining order must allege specific facts or threats. *Wishnatsky v. Huey*, 1997 ND 35, ¶ 14, 560 N.W.2d 878. It is insufficient to show the person's actions are unwanted; rather, the petitioner must show specific unwanted acts that are intended to affect the safety, security, or privacy of another person. *Tibor*, 1999 ND 176, ¶ 9, 599 N.W.2d 301. Subjective fear is insufficient to support a disorderly conduct restraining order. *Williams v. Spilovoy*, 536 N.W.2d 383, 384–85 (N.D.1995). A trial court has discretion to grant a disorderly conduct restraining order, and we will not reverse that decision unless the court clearly abused its discretion. *Baker v. Mayer*, 2004 ND 105, ¶ 7, 680 N.W.2d 261.

A

[¶ 8] Nagel contends the trial court abused its discretion as a matter of law in granting the disorderly conduct restraining order because it is undisputed that Cusey contacted Nagel by telephone after obtaining the ex parte temporary restraining order. Nagel argues the court should have denied the petition in the exercise of its supervisory powers "to protect the integrity of the judicial process," because Cusey's conduct amounts to an "abuse of process."

[¶ 9] The temporary restraining order specified that Nagel not contact Cusey. It did not forbid Cusey from contacting Nagel. Nagel's attempt to have us view a temporary disorderly conduct restraining order as imposing reciprocal prohibitions against the petitioner raises serious due process concerns. Because of "the significant restraint placed upon the respondent's liberty and the stigma resulting from a disorderly conduct restraining order," a person who would be subject to the order's restrictions has certain procedural due process protections. *Gullickson v. Kline*, 2004 ND 76, ¶ 8, 678 N.W.2d 138. Those due process protections would be nonexistent for the petitioner if we accepted Nagel's argument. While a petitioner's contact with a respondent who is subject to the restrictions imposed by a temporary restraining order might certainly be a factor for the court to consider in evaluating the merits of the petition during the hearing, Nagel's argument that the petitioner's contact with the respondent should automatically bar the petitioner from any relief is without merit.

B

[¶ 10] The dispositive issue in this case is whether the trial court abused its discretion in finding reasonable grounds to issue the disorderly conduct restraining order against Nagel.

[¶ 11] Because of the stigma and grave consequences to the respondent associated with a disorderly conduct restraining order, we have repeatedly stressed that a person who petitions for an order must allege specific facts or threats. *See, e.g., Baker*, 2004 ND 105, ¶ 16, 680 N.W.2d 261; *Tibor*, 1999 ND 176, ¶ 7, 599 N.W.2d 301; *Williams*, 536 N.W.2d at 385. "Vague generalities do not suffice," and "[c]onclusory testimony that 'he harassed me,' 'he abused me,' or 'he threatened me' does little to aid the trial court in determining whether the alleged perpetrator's actions rise to the level of disorderly conduct under the statute." *Williams*, 536 N.W.2d at 385. Here, the trial court found Nagel had "committed disorderly conduct, specifically yelling and screaming at the petitioner at his place of employment, and continuing to call his place of employment and leave messages." The only evidence in the record to support this finding is Cusey's statement in the affidavit that "Nagel showed up at my place of employ-

ment yelling and screaming at me ... and she continues to call my place of employment leaving messages for me to call her." Cusey presented no evidence through his affidavit or testimony at the hearing establishing what Nagel said to him when she was "yelling and screaming," or the specific content and frequency of Nagel's phone messages "for [him] to call her." We have said "subjective fear" is not enough, and Cusey did not even allege any fear of Nagel or her actions. *See Baker*, at ¶ 17.

[¶ 12] To the extent the trial court may have relied on other allegations contained in Cusey's affidavit, we believe those allegations are equally insufficient to support the petition for the disorderly conduct restraining order. Cusey's allegation that Nagel "went out to my house while I was not there ... many times" is ambiguous at best. Cusey's allegation that Nagel "stared" at Cusey and his girlfriend at a bar "the whole night" is nothing more than an incident in which the "parties were, by happenstance, in the same location when [Nagel] conducted [herself] in a manner objectionable to [Cusey]." *Wishnatsky*, 1997 ND 35, ¶ 9, 560 N.W.2d 878. Although Cusey's affidavit alleged Nagel also engaged in conduct directed at Stoppler and Barr, N.D.C.C. § 12.1–31.2–01 "does not authorize one person to seek a restraining order based upon disorderly conduct directed at some other person." *Gullickson*, 2004 ND 76, ¶ 13, 678 N.W.2d 138. Nor do the vague allegations in the affidavit establish a specific " 'pattern of intimidation' " required to provide sufficient grounds for the order. *Wishnatsky*, at ¶ 9 (quoting *Cave v. Wetzel*, 545 N.W.2d 149, 150 (N.D.1996)).

[¶ 13] "It is not enough under the statute that the petitioner for a restraining order wants the other person out of the petitioner's life." *Williams*, 536 N.W.2d at 385. Cusey's vague allegations

in this case are insufficient as a matter of law to support the order. We conclude a person of reasonable caution would not believe Nagel's actions constituted the offense of disorderly conduct, or that she intended her actions to affect Cusey's safety, security, or privacy. The trial court abused its discretion in issuing a disorderly conduct restraining order against Nagel.

C

[¶ 14] As is often the case with petitioners for disorderly conduct restraining orders, Cusey was not represented by an attorney in the trial court and made no appearance before this Court on appeal. The entire transcript of the trial court hearing is only 16 pages long. At the beginning of the hearing, and before Cusey was sworn by the court recorder to testify, the court asked Cusey whether everything in his affidavit was true and whether there was "anything you want to add to that at this time?" When Cusey began to talk about incidents that were not contained in the affidavit, Nagel's attorney objected to Cusey "bringing in new information" and requested that the court "strike all those statements that was [sic] just stated on the record and go strictly by this affidavit and only the portions that are not hearsay." The court granted the motion and allowed Nagel and her mother to testify. After their testimony was received, Cusey was sworn by the court recorder, and the court asked him to "not make any new allegations, but if you have any response to anything that the respondent said, I'll give you that opportunity at this time." Cusey testified, Nagel's attorney cross-examined Cusey, and the trial court granted the order.

[¶ 15] At Nagel's request, the trial court permitted Cusey to present his case only by use of his affidavit. We have held that a trial court conducts a "full

hearing" on a disorderly conduct restraining order petition by accepting affidavits and allowing cross-examination, at least when the parties raise no objection to the form of the hearing. *Skadberg*, 2002 ND 97, ¶ 14, 644 N.W.2d 873. Cusey did not object to the form of the hearing. Nevertheless, we believe the better practice is to allow the petitioner to present evidence through his own or other persons' testimony, rather than through the affidavit accompanying the petition. The "primary purpose of an evidentiary hearing is to allow the parties to present evidence through testimony and allow the factfinder to hear and view the witnesses, assess their credibility, and thereby resolve factual disputes." *Gullickson*, 2004 ND 76, ¶ 17, 678 N.W.2d 138. This purpose is undermined when one of the parties to the proceeding is limited to presenting evidence in his case in chief only by affidavit. Also the affidavits often contain hearsay, which must be disregarded. While a petitioner cannot through testimony raise new allegations without notice to the respondent, *id.* at ¶ 12, the allegations in the petition should be established through sworn testimony of the petitioner and other witnesses at the time of the hearing, and the respondent and other witnesses should have an opportunity to respond to the petitioner's allegations with admissible evidence. The petition and affidavit itself is hearsay, since it is an out-of-court statement made to prove the truth of the allegations, and is not admissible in evidence under N.D.R.Ev. 801(c). No written response of the respondent is provided for in N.D.C.C. § 12.1–31.2–01(5), and a hearing on the petition should, at a minimum, require the petitioner to prove the allegations by admissible evidence at the hearing, and provide an opportunity for the respondent to appear and contest the issuance of a restraining order by offering admissible evidence in opposition to the petitioner's claims. Although the disorderly conduct restraining order statute "seek[s] to quickly and effectively combat volatile situations before any tragic escalation," *Skadberg*, at ¶ 13, the concern for expeditious proceedings should not override the need to fairly resolve factual disputes.

### III

[¶ 16]   In view of our disposition of this case, it is unnecessary to address the other issues raised. We reverse the two-year disorderly conduct restraining order against Nagel.

[¶ 17] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., BRUCE E. BOHLMAN, S.J., concur.

[¶ 18] The Honorable BRUCE E. BOHLMAN, S.J., sitting in place of SANDSTROM, J., disqualified.

[¶ 19] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.