2007 ND 18

**Breanna J. MEIER, Petitioner
and Appellee**

**v.**

**Mohamed H. SAID, Respondent
and Appellant.**

No. 20060248.

Supreme Court of North Dakota.

Feb. 1, 2007.

Breanna J. Meier, petitioner and appellee. No appearance.

Jason W. McLean, Gjesdahl & Associates, Fargo, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Mohamed H. Said appealed from a disorderly conduct restraining order directing him to have no contact with Breanna Meier for two years. Said argues that the district court erroneously allowed Meier to testify about allegations not con-

tained in the petition for relief, and that the district court abused its discretion because there were no reasonable grounds to support the issuance of the restraining order. We affirm.

I

[¶ 2] Said and Meier had a brief relationship which began in late 2005. In December 2005, Meier moved from North Dakota to California to live with Said. In early January 2006, Meier discovered that she was pregnant and due to give birth in September. After Meier told Said about her pregnancy, the parties had a disagreement about whether she should have the baby. According to Meier, Said tried to force her to have an abortion, but she refused. Said disputed this allegation. Said admitted that he researched emergency contraception on the Internet shortly after finding out about the pregnancy, but denied that he ever pressured Meier to have an abortion. Said claimed that Meier initially agreed to have an abortion but then changed her mind, and he gave up the idea at that point. After their disagreement about terminating the pregnancy, Meier left California and returned to North Dakota for about three weeks.

[¶ 3] While Meier was in North Dakota, the parties continued communicating with each other. During their conversations, Said told Meier that he had changed his mind about the pregnancy, and that he wanted them to have the baby and get married. On February 4, 2006, Meier returned to California to reconcile with Said. They married two days later on February 6, 2006. After about two weeks of marriage, Meier ended the relationship and returned to North Dakota permanently.

[¶ 4] At the time the district court considered this case, Said and Meier were involved in other legal actions as a result of their separation. An annulment proceeding was pending in California. Also, in early August 2006, Said filed an action in Cass County, North Dakota, seeking a paternity test and sole physical custody of their unborn child. On August 9, 2006, Said's counsel mailed a letter to Meier, along with service of the summons and complaint, asserting that Said had the right to participate in the naming of the child and to be present at the birth. The letter also demanded information about Meier's due date, her prenatal care plan, the intended location of the birth, and any upcoming prenatal appointments concerning the child. In a motion filed with the district court in late August, Said renewed his demands to be present at the hospital for the birth and to participate with Meier in naming the child.

[¶ 5] On September 1, 2006, Meier filed a petition for a disorderly conduct restraining order against Said. In her accompanying affidavit, Meier alleged that Said tried to force her to have an abortion when he first learned of her pregnancy, that he put pieces of crushed up abortion pills in a bowl of soup he served to her, and that he raped her during their marriage. Meier also claimed that because of this abusive past, Said's demand to be present at the birth of their child caused her to experience stress, fear, and anxiety. Based on Meier's petition, the district court issued a temporary disorderly conduct restraining order against Said. The district court also scheduled a hearing on September 14, 2006, to determine whether the temporary order should be extended.

[¶ 6] About ten minutes before the hearing, Meier served a supplemental affidavit upon the district court and opposing counsel. Said objected to the admission of

the affidavit, arguing that it had not been timely filed and that it violated his right to due process. The district court refused to accept the supplemental affidavit, but ruled that Meier could testify about its contents as long as her testimony involved the allegations contained in her petition and original affidavit.

[¶ 7] At the hearing, the district court heard testimony from both Meier and Said. Meier testified that she feared for her safety and that she felt threatened because Said wanted to be present during the child's birth. She recounted specific incidents that had occurred during the time she lived with Said in California. Meier testified that Said raped her multiple times during their two-week marriage. Specifically, she stated that after their marriage ceremony on February 6, 2006, Said told her that they had to have sexual relations to consummate their marriage, and when she refused, he forced her to have sex. Meier also recounted that from February 7 to February 18, she would wake up in the middle of the night and find Said removing her underwear and forcing himself on her. According to Meier, she was concerned about having a miscarriage because she experienced some bleeding after the assaults.

[¶ 8] Furthermore, Meier testified about three separate incidents in which she vomited after eating food served to her by Said. As to the first incident, Meier stated that on the evening of February 6, 2006, she found a piece of a pill in the bottom of a bowl of tomato basil soup that Said had purchased and served her. She described the incident in detail, including that Said had turned off the lights and lit candles before serving her the soup. According to Meier, the soup initially tasted normal, but near the bottom of the bowl it tasted like aspirin. Meier stated that she became very ill and vomited after eating the soup. Additionally, Meier recounted that the next day, while using their home computer, she discovered that Said had recently run a Google search about how to buy abortion pills online without a prescription. She specifically remembered that his research included a type of pill called Mifepristone, which was described on the web site as a pill used for early first-term abortions.

[¶ 9] In addition to the soup incident, Meier testified that she became violently ill and vomited two other times after eating food Said had purchased and served her at home. According to Meier, Said purchased her an egg-and-cheese bagel sandwich from a particular restaurant on both occasions. Meier stated that prior to these incidents, she had recently eaten the exact same meal at the restaurant with no ill effects. Additionally, she explained that she never experienced vomiting with her pregnancy other than these three incidents involving food served by Said.

[¶ 10] Said also submitted an affidavit and testified at the hearing, and he denied all of Meier's allegations. Said claimed that Meier was trying to put a black spot on his immigration record, since he is in the United States as a guest worker. He also contended that Meier petitioned for a restraining order to retaliate against him for filing a custody action. Said testified that he did not intend to contact Meier in the future and that he would come to North Dakota only for court proceedings and to see his child.

[¶ 11] The parties agreed they had limited contact after Meier left California. According to Meier, Said contacted her on MSN Messenger and asked her to come home in early March 2006. The last direct

contact between the parties occurred on March 30, 2006, when Meier sent Said an e-mail. In the e-mail, Meier asked Said to give up his parental rights so they could go their separate ways. She also discussed their rocky relationship, stating that she would have regretted having an abortion like Said wanted and that she could not handle him taking out his anger on her anymore.

[¶ 12] After considering the evidence, the district court issued a disorderly conduct restraining order prohibiting Said from any contact with Meier for two years. The district court found that Meier testified about specific facts and instances as required by law and that "[r]ape and attempts at giving Meier drugs, as well as emotional abuse" constituted disorderly conduct.

## II

[¶ 13] Said argues the district court erroneously allowed Meier to testify about new allegations which were not contained in her petition and original affidavit.

[¶ 14] Under N.D.C.C. § 12.1–31.2–01(2), a person who has been the victim of disorderly conduct may petition for a disorderly conduct restraining order. Section 12.1–31.2–01(3) sets forth certain requirements for the petition:

A petition for relief must allege facts sufficient to show the name of the alleged victim, the name of the individual engaging in the disorderly conduct, and that the individual engaged in disorderly conduct. An affidavit made under oath stating the specific facts and circumstances supporting the relief sought must accompany the petition.

The district court may issue a temporary restraining order based upon the allegations in the petition. N.D.C.C. § 12.1–31.2–01(4). However, the district court must hold a full hearing before it may grant a long-term disorderly conduct restraining order, which may not exceed a period of two years. N.D.C.C. § 12.1–31.2–01(5) to (6).

[¶ 15] We have held that due process requirements must be met throughout the restraining order proceedings. *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 23, 705 N.W.2d 836. At the hearing, the petitioner must prove the allegations in the petition through sworn testimony, rather than by affidavits alone, with an opportunity for cross-examination. *Id.* Furthermore, the petitioner may not raise new allegations through her testimony without notice to the respondent. *Cusey v. Nagel*, 2005 ND 84, ¶ 15, 695 N.W.2d 697; *Gullickson v. Kline*, 2004 ND 76, ¶ 12, 678 N.W.2d 138. In order to comport with due process, a fair hearing requires reasonable notice or opportunity to know of the claims of opposing parties, along with the opportunity to rebut those claims. *Gullickson*, at ¶ 12.

[¶ 16] In this case, about ten minutes prior to the hearing, Meier submitted a supplemental affidavit containing a more detailed description of her original allegations, along with several new allegations. Upon Said's objection, the district court properly refused to accept the affidavit because Meier's filing was not timely under N.D.R.Civ.P. 5(d)(2). However, the district court also ruled that Meier could testify about the contents of the supplemental affidavit, so long as her testimony concerned only the allegations contained in her petition and original affidavit, and not the new allegations. The district court correctly recognized that Meier's last-minute service of the supplemental affidavit

did not provide reasonable notice to Said of the new allegations which she intended to raise through her testimony.

[¶ 17] Despite this ruling, Meier testified about several new allegations. Specifically, she testified about an instance of sexual misconduct on February 4, 2006, as well as the two instances in which she became ill and vomited after eating a bagel sandwich purchased and served by Said. These incidents were clearly new allegations which were not contained in her original affidavit. Meier also testified about a series of rapes which occurred from February 7 to February 18, and these rapes were arguably not alleged in her original affidavit. The original affidavit states, "During February 6 he also began to rape me...." Although this statement could be read to include only the rape which occurred on February 6, as Said contends, it more likely refers to a course of conduct which began on February 6 and continued until Meier left California in mid-February.

[¶ 18] However, we need not decide exactly which portions of Meier's testimony should have been excluded as improper new allegations raised through testimony, because Said did not object to any of her testimony on this ground. He only objected to the admission of her supplemental affidavit, which the district court sustained. Said failed to object at any point during Meier's testimony when she discussed these new allegations. A party must object at the time the alleged error occurs, so the district court may take appropriate action if possible to remedy any prejudice that may have resulted. *May v. Sprynczynatyk*, 2005 ND 76, ¶ 25, 695 N.W.2d 196 (citations omitted). Failure to object acts as a waiver of the claim of error. *Id.* Although the district court

ruled that Meier could not testify about new allegations, it was Said's obligation to object when Meier's testimony veered into a discussion of the new allegations. Because Said failed to object to Meier's testimony about the new allegations in the district court, we conclude he waived the objection and cannot raise it for the first time on appeal. *See State v. Palmer,* 2002 ND 5, ¶ 8, 638 N.W.2d 18.

### III

[¶ 19] Said argues the district court abused its discretion when it issued the disorderly conduct restraining order against him because there were no reasonable grounds to believe that he engaged in disorderly conduct.

[¶ 20] The district court has discretion to grant a disorderly conduct restraining order, and we will not reverse that decision unless the court clearly abused its discretion. *Cusey v. Nagel,* 2005 ND 84, ¶ 7, 695 N.W.2d 697. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Frisk v. Frisk,* 2005 ND 154, ¶ 6, 703 N.W.2d 341.

[¶ 21] Section 12.1–31.2–01, N.D.C.C., governs the issuance of disorderly conduct restraining orders. The district court may grant a disorderly conduct restraining order if it finds that "there are reasonable grounds to believe that the respondent has engaged in disorderly conduct." N.D.C.C. § 12.1–31.2–01(5)(d). "Disorderly conduct" is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person." N.D.C.C. § 12.1–31.2–01(1). We have held that the term "reasonable

grounds" is synonymous with probable cause. *See, e.g., Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 17, 705 N.W.2d 836. Reasonable grounds exist when the facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed. *Cusey*, 2005 ND 84, ¶ 6, 695 N.W.2d 697.

[¶ 22] To support a request for a disorderly conduct restraining order, the petitioner must present evidence of specific acts or threats which constitute disorderly conduct. *Baker v. Mayer*, 2004 ND 105, ¶ 13, 680 N.W.2d 261. It is not enough for the petitioner to show merely that the respondent's actions were unwanted. *Cusey*, 2005 ND 84, ¶ 7, 695 N.W.2d 697. Rather, the petitioner must show that specific unwanted acts were intended to adversely affect her safety, security, or privacy. *Baker*, at ¶ 12. Subjective fear alone is insufficient to support the issuance of a disorderly conduct restraining order. *Cusey*, at ¶ 7.

[¶ 23] In *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 21, 705 N.W.2d 836, we clarified that a pattern of behavior is not required in order for conduct to rise to the level of disorderly conduct. Rather, "acts, words, or gestures occurring at one moment in time could easily be disorderly conduct under § 12.1–31.2–01." *Id.* at ¶ 20. A petitioner whose safety, security, or privacy has been intruded upon cannot be denied the civil remedy of a disorderly conduct restraining order "simply because the respondent's actions occurred at one time." *Id.*

[¶ 24] We have also recognized the grave consequences that a disorderly conduct restraining order may have for the respondent. *See, e.g., Cusey*, 2005 ND 84, ¶ 11, 695 N.W.2d 697; *Baker*, 2004 ND 105, ¶ 14, 680 N.W.2d 261. A disorderly conduct restraining order significantly restricts a person's liberty. *Baker*, at ¶ 14. Furthermore, stigma in the community may result due to the nature of the charge. *Id.*

[¶ 25] Based on the evidence in this case, we conclude the district court did not abuse its discretion when it issued the disorderly conduct restraining order against Said. Meier testified about specific acts, including rapes and druggings to induce abortion, and provided specific facts about each incident. Rapes and druggings are surely intrusive and unwanted acts which must be intended to adversely affect a person's safety, security, and privacy. Meier's testimony about these incidents provided reasonable grounds for the district court to believe that Said had engaged in disorderly conduct.

[¶ 26] Said contends the district court did not have reasonable grounds to grant the restraining order because Meier and Said presented conflicting testimony, and Meier did not provide any corroborating evidence such as police or medical reports. However, Meier's sworn testimony is evidence, and her testimony alone was sufficient to support the issuance of the disorderly conduct restraining order. *See Wetzel*, 2005 ND 190, ¶ 25, 705 N.W.2d 836. Section 12.1–31.2–01, N.D.C.C., does not require corroborating evidence, such as eyewitnesses or official reports, to bolster the petitioner's testimony, although such corroborating evidence may be useful to the district court. Here, the district court heard conflicting testimony from Meier and Said and chose to believe Meier's version of events. We have repeatedly recognized that the district court

is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence than we who have only the cold record to review. *See, e.g., Skadberg v. Skadberg*, 2002 ND 97, ¶ 9, 644 N.W.2d 873. Therefore, we will not preempt the district court's credibility determination in this case. Meier's testimony, even though contradicted by Said, provided reasonable grounds for the district court to find that Said had engaged in disorderly conduct.

[¶ 27] Said also argues the disorderly conduct restraining order was not warranted in this case because of the distance between the parties and the time that had passed since the intrusive acts occurred. Meier currently lives in North Dakota, and Said lives in California. The incidents which constituted disorderly conduct occurred during the parties' brief marriage in February 2006. The parties agree that their last direct contact occurred by e-mail on March 30, 2006. However, when Said filed an action in Cass County, North Dakota, in August 2006 demanding the right to be present at their child's birth and to participate in the naming of the child, Said sought to place himself in North Dakota and in contact with Meier. Based on the history between the parties, Meier reasonably felt threatened by Said's request. Although there must be logical limits on the time and distance factors when a restraining order is at issue, we conclude the facts of this case do not reach those limits. Based on all the evidence, the district court did not abuse its discretion in granting the disorderly conduct restraining order against Said.

## IV

[¶ 28] We affirm the two-year disorderly conduct restraining order against Said.

[¶ 29] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.