2010 ND 44

**Randy WESTBY, Plaintiff and Appellee**

v.

**Gary J. SCHMIDT and Schmidt Construction of Stanley, Inc., Defendants and Appellants.**

**No. 20090109.**

Supreme Court of North Dakota.

March 16, 2010.

Bryan Lee Van Grinsven, Minot, N.D., for plaintiff and appellee.

Tom P. Slorby, Minot, N.D., for defendants and appellants.

MARING, Justice.

[¶ 1]   Gary Schmidt and Schmidt Construction of Stanley, Inc. ("appellants") appeal from a district court judgment entered after a jury awarded Randy Westby $239,595.14 in damages in a breach of contract action.   We affirm, concluding the district court did not abuse its discretion by allowing expert testimony, there was sufficient evidence to support the jury's verdict, and the court did not err in denying the appellants' motion to dismiss the corporation as a defendant.

I

[¶ 2]   In early 2006, Westby began talking to Schmidt, a licensed contractor doing business as Schmidt Construction, about his plans to build a house.   On June 21, 2006, Westby and Schmidt executed an agreement for the construction of the house.   The agreement stated the estimated cost of construction was $435,362.95. The agreement also stated, "[Gary Schmidt/dba Schmidt Construction] agrees to furnish all material and perform all work necessary to complete the [house] ... according to the plans and specifications (details thereof to be furnished as needed) and to the full satisfaction of [Westby]."   Construction on the house began in July 2006.

[¶ 3]   Before the agreement was signed Schmidt began forming a corporation and planned to transfer all of his business to the corporation.   The corporation was incorporated on June 5, 2006.   Schmidt allowed his contractor's license to lapse and began operating under the corporation's contractor's license.

[¶ 4]   Westby initially received invoices for the work on the house from Schmidt Construction, but by February 2007 the corporation began sending the invoices. Westby testified he paid the invoices he received, including the invoices from the corporation.

[¶ 5]   In   May   2007,   Westby   told Schmidt he was not happy with the work and he wanted Schmidt to stop working on the house.   There was evidence Westby had made payments to Schmidt and the corporation of $500,321.46, and the work on the house was approximately sixty percent complete.   Westby hired a new general contractor, Mindt Construction, to finish building the house.   Westby paid Mindt Construction $219,462.68 to complete the construction of the house and to repair some of the work already completed.

[¶ 6]   Westby sued Schmidt and the corporation for breach of contract, seeking $250,443.34 in damages.   Westby claimed Schmidt and the corporation breached the contract by demanding payment in excess of the contract price, failing to complete the work on the house, failing to pay two subcontractors, performing substandard and deficient work, and failing to construct the structure according to the plans and Westby's full satisfaction.   After a jury trial, the jury found in favor of Westby and awarded him $239,595.14 in damages.

## II

[¶ 7] The appellants argue the district court erred in allowing Bryan Mindt, Westby's expert witness, to testify without limiting his testimony to the standards or practices of the industry. They contend Mindt's testimony was extensively based on his personal preferences, and he admitted that he was not familiar with industry standards in some instances.

[¶ 8] Under N.D.R.Ev. 702, a party may present testimony from an expert witness:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"Rule 702, N.D.R.Ev., envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the field in which the witness is to testify." *State v. Hernandez,* 2005 ND 214, ¶ 8, 707 N.W.2d 449. The district court's decision whether a witness is qualified as an expert and to allow the testimony is within the court's discretion, and the court's decision will not be reversed on appeal unless the court abused its discretion. *Id.* A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.*

[¶ 9] Mindt testified he owns Mindt Construction and has worked in the construction industry for over twenty years. He testified his company specializes in building custom homes, and he has worked on three to four hundred custom homes during his career. The appellants are not challenging his qualifications as an expert witness. Rather, the appellants argue the district court erred in allowing Mindt to testify about his own preferences for construction techniques instead of industry standards.

[¶ 10] The appellants objected to Mindt's testimony five times during the trial arguing his testimony was not based on industry standards. The district court sustained some of the appellants' objections and Westby's attorney agreed to rephrase other questions without further objection. The court overruled two of the appellants' objections. The court overruled the first objection when Mindt was testifying about the duct work:

Q. Did you have any problems finding cold air returns or duct work in the Westby house?

A. Master bedroom area, we found none whatsoever.

Q. No vents?

A. Well, no cold air returns. We found some heat runs. Again, they have floor heat, and everybody says, well, you don't really need it, and I say what do you do when air conditioning comes? So we made a determination to—I believe we removed the furnace, some of the duct work, found a way to get cold air returns into the master bedroom area.

MR. SLORBY: Your Honor, I'm going to object. Again, I think the witness is straying from the required standards of the trade and what is required by the trade, as opposed to what he, himself, his own preferences does.

THE COURT: Overruled.

The second objection the court overruled occurred when Mindt was asked what expenses he includes in his estimates. The appellants objected arguing the testimony should be limited to the industry standards, and the court overruled the objec-

tion and instructed Mindt to answer the question.

[¶ 11] The district court has broad discretion in deciding whether a witness's testimony will assist the trier of fact, and we are reluctant to interfere with the court's decision. *Hernandez*, 2005 ND 214, ¶ 8, 707 N.W.2d 449. Mindt testified about specific work he completed on the house and why he felt the work was necessary. In that instance, Mindt was not being presented as an expert witness, but as a fact witness who observed the condition of the house and decided what repairs should be made. Mindt also testified about his specific practices in writing estimates for work. The court did not abuse its discretion by admitting this testimony.

[¶ 12] The appellants also contend much of Mindt's other testimony was not limited to industry standards; however, the appellants did not object to that testimony. Under N.D.R.Ev. 103 a court's decision to allow or exclude evidence will not be reversible error unless the party objected to the court's decision and the party's substantial rights were affected. A party must object at the time the alleged error occurs to allow the district court to take appropriate action to remedy any prejudice that may have resulted. *Meier v. Said*, 2007 ND 18, ¶ 18, 726 N.W.2d 852. If a party fails to object to the admission of testimony, the party waives the objection. *Id.* Under N.D.R.Civ.P. 61, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

[¶ 13] The appellants failed to object to the testimony they now complain about and they have not shown their substantial rights were affected. During cross-examination the appellants questioned Mindt about industry standards and code requirements, which are the minimum standards, and whether the work Schmidt completed on the Westby house was within those standards. Any weaknesses in Mindt's testimony were brought to the attention of the jury. As we have said in prior cases:

> weakness in an expert's opinion affects credibility, not admissibility. The [district] court decides the qualifications of the witness to express an opinion on a given topic, but it is the trier of fact whose job it is to decide the expert witness's credibility and the weight to be given to the testimony.

*Gonzalez v. Tounjian*, 2003 ND 121, ¶ 27, 665 N.W.2d 705 (quoting *Myer v. Rygg*, 2001 ND 123, ¶ 20, 630 N.W.2d 62). Whether Mindt had knowledge about certain industry standards is an issue of credibility and affects the weight his testimony should be given, which are matters for the jury to decide. *Cf. In re O.H.W.*, 2009 ND 194, ¶¶ 9–13, 775 N.W.2d 73 (flaws in an expert's testimony because of ethical violations affect the weight his testimony should be given and not its admissibility); *City of Grand Forks v. Hendon/DDRC/BP, LLC*, 2006 ND 116, ¶ 12, 715 N.W.2d 145 (claim that expert did not consider certain factors when giving his opinion about the amount of damages goes to the weight the jury should give the testimony). Any weaknesses in Mindt's testimony were apparent to the jury and his lack of knowledge about industry standards goes to the credibility and weight of his testimony. We conclude the district court did not abuse its discretion by allowing Mindt's expert testimony.

III

[¶ 14] The appellants argue the evidence was insufficient to support the jury's verdict awarding Westby $239,595.14 in damages. They contend the damage amount is not supported by the evidence

because the evidence established most of the work Mindt completed was work that had not yet been started and would have had to be completed and paid for if Schmidt had continued working on the house, or was unnecessary repair work that was done for aesthetic reasons or Mindt's personal preference.

[¶ 15] Our review of a jury's findings is limited, and we view the evidence in the light most favorable to the verdict and determine only if there is substantial evidence to support the findings. *Hendon*, 2006 ND 116, ¶ 8, 715 N.W.2d 145. Special verdicts are upheld on appeal whenever possible, and will only be set aside when the verdict is "perverse and clearly contrary to the evidence." *Id.* When a party challenges whether the evidence is sufficient to support the verdict, we will not invade the province of the jury to weigh the evidence or assess the witnesses' credibility. *Id.*

[¶ 16] Westby sued the appellants for breach of contract. A party alleging a breach of contract has the burden of proving the existence of a contract, a breach of the terms of the contract or the nonperformance of a contractual duty, and damages from the breach. *Martin v. Trinity Hosp.*, 2008 ND 176, ¶ 29, 755 N.W.2d 900. Here, the parties did not dispute that a contract existed. The agreement required that the work be completed "according to the plans and specifications . . . and to the full satisfaction of Owner." This Court has said contracts with satisfaction clauses are generally upheld because an objective standard is usually applied. *Matrix Prop. Corp. v. TAG Inv.*, 2000 ND 88, ¶ 21, 609 N.W.2d 737. The parties agreed that an objective standard applied in this case. The jury instructions provided, "The buyer has a good faith duty to raise only reasonable objections to the contractor's performance.

The buyer's satisfaction with the contractor's performance may not be unreasonably withheld." The appellants did not object to this instruction.

[¶ 17] Applying an objective standard, the evidence was sufficient to find that the appellants breached the terms of the agreement. The evidence established that areas of the Westby house were not entirely on the foundation, which could cause the walls to sag; the walls of a bay window had different dimensions and the windows were not centered; the stone work on the outside of the house was not installed properly and would have voided the manufacturer's warranty; the foundation was not as thick as required in some places; the floor was uneven and a self-leveling compound was used to level the surface; the doors had to be raised after the floors were fixed; the amount of rise between steps on the main staircase varied, making the stairs difficult to walk on; a curved wall was cracking; soffits inside the house were sagging; a window was installed improperly; areas of the home were inadequately insulated; and the fireplace had to be re-installed. The evidence also established problems associated with the sheetrock and electrical work. Viewing the evidence in a light most favorable to the verdict, sufficient evidence exists to support the jury's implicit finding that the appellants breached the contract.

[¶ 18] The determination of the amount of damages is largely within the jury's discretion. *Anderson v. A.P.I. Co. of Minn.*, 1997 ND 6, ¶ 24, 559 N.W.2d 204. We will sustain an award of damages when it is within the range of evidence presented. *Hendon*, 2006 ND 116, ¶ 8, 715 N.W.2d 145.

[¶ 19] The evidence supports Schmidt gave Westby an estimate of $435,362.95 to build the house. Only sixty

percent of the work was completed and Westby had paid the appellants $500,321.46 when Schmidt quit working on the house. The cost to complete the house would be higher than the estimate because of some additional expenses caused by changes to the plans for the house, but Westby admitted that he would be responsible for the increased costs caused by the changes in the plans. Westby paid some of the subcontractors directly for some of the work completed, and Westby paid Mindt $219,462.68 to finish the work on the house and redo some of the work Schmidt had completed. Westby requested $250,443.34 in damages, and the jury awarded him $239,595.14 in damages. The jury's verdict is not perverse and clearly contrary to the evidence, and the award of damages fell within the range of evidence presented at trial.

## IV

[¶ 20] The appellants argue the district court erred in denying their motion to dismiss the corporation as a defendant. They contend the corporation and Schmidt could not both be held liable for breaching the contract, and the corporation's liability should not have been submitted to the jury because it was not a party to the contract.

[¶ 21] The district court denied the appellants' motion to dismiss the corporation as a defendant, finding:

> From the evidence at trial Gary Schmidt entered into a contract with Randy Westby to construct a home. At the time the parties entered into the contract Schmidt was operating his contracting business in his individual capacity. Schmidt had started the process of incorporating his business, but the incorporation process had not yet been completed. Schmidt sent at least one interim bill to Westby on an invoice that did not reflect the existence of a corporation.

At some point during the construction process Schmidt's business became incorporated. Westby was then billed, on an interim basis, by the corporate entity, Schmidt Construction of Stanley, Inc. Westby was apparently never advised of the creation of, or the existence of the corporate entity beyond the fact of invoicing. Westby paid all invoices presented to him, except for a final invoice.... All of Westby's payments were received by Schmidt, or the corporate entity, and were cashed by them.

The original contract was between Gary Schmidt, individually, and Westby. No corporation existed at this time. The contract was never amended to reflect the fact of incorporation. Schmidt therefore argues that only Schmidt the individual, and not the corporate entity, can be the defendant.

A corporation is an artificial person. It can act only through its agents. A corporation that knowingly accepts the benefits of a pre-incorporation contract does so subject to the burdens that go along with that contract. *Erickson v. Brown*, 2008 ND 57, 747 N.W.2d 34. Schmidt Construction of Stanley, Inc., billed Westby. It received payment from Westby. The corporation is therefore bound to the contract, and was subject to perform the contract just as Gary Schmidt was bound to perform.

[¶ 22] The evidence does not support the court's finding that this was a pre-incorporation contract. "The corporate existence begins upon the issuance of the certificate of incorporation...." N.D.C.C. § 10-19.1-12. The undisputed evidence shows the corporation came into existence on June 5, 2006, and the contract was executed on June 21, 2006. The corporation existed at the time the contract was

executed and could have been a party to the contract.

[¶ 23] However, "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting." N.D.C.C. § 9–03–25. *See also Morris v. Ewing*, 8 N.D. 99, 76 N.W. 1047, 1050 (1898).

[¶ 24] Schmidt testified that at the time the contract was signed he planned to incorporate his business, he had filled out and sent in the paperwork to form the corporation, he planned to transfer all of his business to the corporation, and he subsequently let his contractor's license lapse and began using the corporation's license. Schmidt was the principal shareholder and registered agent of the corporation. Schmidt testified the corporation received payments under the contract and he admitted the project became the corporation's at some point. The corporation had knowledge of all of the material facts surrounding the transaction. *See Erickson*, 2008 ND 57, ¶ 17, 747 N.W.2d 34 ("Knowledge of the board of directors, officers, or agents of a corporation is imputed to the corporation."). The corporation billed Westby for the work on the house and accepted his payments under the contract. The corporation knowingly and voluntarily accepted the benefits of the contract. We conclude the corporation is bound by the agreement with Westby. *Cf. Askew v. Joachim Memorial Home*, 234 N.W.2d 226, 237–39 (N.D.1975) (association was bound by an agreement signed by its president when evidence from the asso-

ciation's actions revealed it had ratified the agreement). We conclude the district court did not err in denying the appellants' motion to dismiss the corporation as a defendant.

[¶ 25] Schmidt also argues the case against him individually must be dismissed if it was the intent of the parties to substitute the corporation as a party to the agreement. Schmidt did not raise this issue below. This Court does not address issues raised for the first time on appeal. *See Beeter v. Sawyer Disposal LLC*, 2009 ND 153, ¶ 20, 771 N.W.2d 282. Because Schmidt failed to raise this issue before the district court, we will not address it on appeal.

V

[¶ 26] We conclude the district court did not abuse its discretion by allowing Mindt's testimony, the evidence was sufficient to support the jury's verdict and the damages, and the court did not err in denying the appellants' motion to dismiss the corporation as a defendant. We affirm.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.