2013 ND 37

**Andrea K. HANISCH, Petitioner and Appellee**

v.

**Kelly KROSHUS, Respondent and Appellant.**

No. 20120251.

Supreme Court of North Dakota.

March 1, 2013.

Suzanne M. Schweigert (argued) and Stacy M. Moldenhauer (on brief), Bismarck, N.D., for petitioner and appellee.

Scott A. Hager, Bismarck, N.D., for respondent and appellant.

MARING, Justice.

[¶ 1] Kelly Kroshus appeals from a district court order granting Andrea Hanisch a two-year disorderly conduct restraining order against him. Because we conclude the district court did not abuse its discretion in granting Hanisch a two-year restraining order against Kroshus, we affirm.

I

[¶ 2] Hanisch and Kroshus were never married to each other, but had previously dated until September 2011. They had one child together, who was 16 months old at the time of the hearing in this case. Hanisch and Kroshus unsuccessfully attempted to reconcile in February 2012. On March 21, 2012, Hanisch petitioned the district court for a disorderly conduct restraining order against Kroshus after he sent her a series of allegedly harassing text messages, some of which included sexually explicit pictures of her, and threatened to post pictures on a website. The court granted Hanisch a temporary disorderly conduct restraining order and set a hearing to decide whether to grant a permanent restraining order. Both Hanisch and Kroshus testified at a hearing held on March 28, 2012.

[¶ 3] According to Hanisch's sworn petition, Kroshus began sending her sexually explicit and harassing text messages, including pictures of her genitals and other private parts, beginning on March 18, 2012, at 12:05 a.m. Hanisch asserts Kroshus also claimed in these text messages that he was starting a website with the pictures and called Hanisch derogatory names. Hanisch claimed she received approximately 12 text messages from Kroshus between 12:00 a.m. and 1:34 a.m., on March 18 containing the derogatory lan-

guage and pictures of her genitalia and other private parts.

[¶ 4] Hanisch asserts that, upon discovering the text messages from Kroshus at approximately 8:50 a.m. on March 18, she immediately responded by text message to Kroshus telling him that his text messages were harassment. Kroshus continued to send Hanisch additional text messages containing derogatory comments and pictures of her private parts. Hanisch texted Kroshus at 11:46 a.m. on March 18, stating, "Please stop harassing me." Hanisch asserts Kroshus responded by continuing to send derogatory and harassing text messages and pictures. At 12:10 p.m., Hanisch texted Kroshus that "I[']ll be talking with my atty about this tomorrow. Now leave me alone." At 12:14 p.m., Kroshus responded by sending Hanisch another picture of her private parts, which she contends was nonconsensual, with a derogatory comment. At 12:24 p.m., Hanisch sent Kroshus a text message stating, "I have ur texts. Now leave me the hell alone." Kroshus nonetheless continued to send derogatory text messages and pictures of her private parts. Hanisch asserts she again responded requesting that he stop sending her harassing text messages. At 1:50 p.m., on March 18, Kroshus sent Hanisch a final derogatory text with a picture of her private parts.

[¶ 5] At the hearing, Hanisch testified regarding the content of some of the text messages, in which Kroshus had called her derogatory names and made derogatory and harassing comments. Hanisch also testified that she had received the illicit pictures of her private parts with text messages from Kroshus and that he had threatened to put at least "a few" of the pictures on a website. Although Hanisch acknowledged that she and Kroshus had previously used derogatory language toward each other and had taken and sent

pictures to each other while they were in a relationship, Hanisch testified that some of the pictures Kroshus sent to her in this series of harassing text messages were nonconsensual.

[¶ 6] Kroshus essentially acknowledged that he sent the text messages described in Hanisch's petition for the restraining order, but testified that sending such messages and sexual pictures was a normal part of their relationship while they were dating. He testified that he had a significant amount of alcohol to drink in the early morning hours on March 18 when he sent the text messages at issue, but that he had stopped texting her once he received the text message back from Hanisch to stop texting. Kroshus also testified that his cell phone reception was limited at the time and would prevent him from receiving the text messages from Hanisch until later in the day.

[¶ 7] At the end of the hearing, the district court found that Kroshus had committed disorderly conduct. The court issued a disorderly conduct restraining order against Kroshus precluding him from coming within 50 feet of Hanisch and from having contact with her for a period of two years.

## II

[¶ 8] Kroshus argues the district court abused its discretion by issuing the disorderly conduct restraining order.

▇▇▇▇ [¶ 9] Under N.D.C.C. § 12.1–31.2–01, the district court has discretion "to grant a disorderly conduct restraining order and to conduct a hearing on a petition for an order." *Gonzalez v. Witzke*, 2012 ND 60, ¶ 8, 813 N.W.2d 592. This Court will not reverse a district court's decision to grant a restraining order or to conduct a hearing absent an abuse of discretion. *Id.* The district court abuses its

discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.*

[¶ 10] "Disorderly conduct" is defined as "intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person" but "does not include constitutionally protected activity." N.D.C.C. § 12.1–31.2–01(1). Under N.D.C.C. § 12.1–31.2–01(4), the district court may grant a temporary disorderly conduct restraining order without notice to the respondent and pending a full hearing when the petitioner alleges "reasonable grounds" to believe that an individual has engaged in disorderly conduct. The court may then grant a restraining order if the petitioner complies with the procedural requirements of N.D.C.C. § 12.1–31.2–01(5), and if after a hearing, the court finds "reasonable grounds" to believe the respondent has engaged in "disorderly conduct."

[¶ 11] The petitioner's case must be proven in a full hearing before the court through testimony, rather than affidavits alone, with an opportunity for cross-examination. *Gonzalez*, 2012 ND 60, ¶ 18, 813 N.W.2d 592. "It is insufficient to show the person's actions are unwanted; rather, the petitioner must show specific unwanted acts that are intended to affect the safety, security, or privacy of another person." *Cusey v. Nagel*, 2005 ND 84, ¶ 7, 695 N.W.2d 697. "All that is required under the statute are 'reasonable grounds to believe that the respondent has engaged in disorderly conduct.'" *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 19, 705 N.W.2d 836. "In other words, an objective, reasonable person must believe the respondent has engaged in ... [disorderly conduct]." *Id.* A single occurrence of disorderly conduct may be sufficient for the court to grant a restraining order, and showing a "pattern" is not required. *Gonzalez*, at ¶ 23.

[¶ 12] Kroshus argues that he and Hanisch would both often send pictures to each other and make derogatory comments toward each other, and that they did this to spice up their relationship, as a way of flirting. Kroshus contends that once he received the text message from her telling him to stop texting, he stopped. He also asserts that cell phone reception on his phone was limited and prevented him from receiving text messages from Hanisch until later in the day. Kroshus argues that the facts of the case do not support a finding of disorderly conduct. He argues that the text messages to Hanisch took place during a relatively short period of time, that he had consumed a large amount of alcohol and thought they were still working on their relationship, and that the delay for him to stop texting her does not amount to an attempt to adversely affect her safety, security, or privacy.

[¶ 13] Nonetheless, to issue a disorderly conduct retraining order under the statute, the district court must only find "reasonable grounds" to believe that the respondent has engaged in "disorderly conduct." *See* N.D.C.C. § 12.1–31.2–01(5)(d). In deciding to grant the disorderly conduct restraining order, the district court discussed the evidence supporting the petition:

THE COURT: Well, I understand that there are a lot of things that people can do consensually [verbatim] that somebody else might not agree with, but as long as they are consensual that's just fine. But, once they become unacceptable and that consent is withdrawn they are treated differently.

From the evidence presented to me today, I can see absolutely no definition other than that these would fit with disorderly conduct. And I know I'm 60 years old, and I'm in a different generation, and I have led a sheltered life, but the conversations as listed in here, there is no way that I can see them as anything other than intentional attempts to intrude on someone, and I could see of no justification whatsoever for these text messages, at all. Being drunk is not an excuse. And I just find his behavior to be deplorable.

I am encouraged by the fact that they stopped. I find his explanation plausible, that they got sent later. I have had many text messages delivered two days later, when some computer has decided to send them. I have no reason to doubt that, and I am encouraged by that, but that's not enough for me to say no disorderly conduct restraining order has been proven, or the elements aren't here, or that I shouldn't issue one to give her at least a little bit of more security that I believe she's entitled to. The order is extended for a two year period, will end on March 20th, 2014. I would like it noted for the record and in the order … that this order will be trumped by any custody order issued by appropriate courts.

■ [¶ 14] Here, Hanisch established through her sworn petition and testimony at the hearing that Kroshus had sent her the harassing text messages and pictures of her genitals and other private parts of her body, at least some taken without her consent, via text message to her. She also established that in at least one message Kroshus threatened to put some pictures on an internet website. Although Kroshus testified that he had never taken nonconsensual photographs, Kroshus admitted that he had sent the series of text messages of a sexual nature and admitted calling Hanisch derogatory names and making very derogatory comments. Further, although Kroshus contends he did not immediately stop sending messages because there was a delay in his phone reception, Hanisch points to a number of text messages that were in response to her requests for him to stop harassing her.

[¶ 15] In reaching its decision, the district court found the series of text messages Kroshus sent to Hanisch constituted disorderly conduct and were intended to adversely affect her safety, security, and, in particular, intrude on her privacy. Based on our review of the record, we conclude the district court did not act in an arbitrary, unreasonable, or unconscionable manner, did not misinterpret or misapply the law, and that the court's decision is the product of a rational mental process leading to a reasoned determination. We therefore conclude the court did not abuse its discretion in granting the disorderly conduct restraining order.

### III

[¶ 16] Kroshus argues the district court abused its discretion in precluding any and all contact with Hanisch.

■ [¶ 17] As discussed, "the grant of a restraining order is discretionary, and a district court's decision must be reviewed under an abuse-of-discretion standard." *Hoggarth v. Kropp*, 2010 ND 197, ¶ 17, 790 N.W.2d 22 (quotations omitted). "While we give deference to the district court under the abuse-of-discretion standard, we nonetheless scrutinize a disorderly conduct restraining order to make sure it is narrowly tailored as to time and distance." *Id.* at ¶ 18. Generally, we have explained that "[l]ogical limits on time and distance must be present in a restraining order to minimize unnecessary harm to the person bound by it." *Id.*

[¶ 18] Here, in issuing the two-year disorderly conduct restraining order precluding Kroshus from having any contact with or coming within 50 feet of Hanisch, the district court sought to provide additional security from Kroshus's disorderly conduct directed at Hanisch. The court also recognized that the parties have a minor child together and stated the order should not be interpreted in any manner to interfere or conflict with or supersede any subsequent court orders relating to the custody proceedings involving the parties' minor child. The court's order thus allows for subsequent district court orders specifically addressing custody of the parties' child.

[¶ 19] We believe the district court's order contains "[l]ogical limits on time and distance" and "minimize[s] unnecessary harm to" Kroshus, and therefore the court did not abuse its discretion regarding the scope of the disorderly conduct restraining order.

### IV

[¶ 20] The order is affirmed.

[¶ 21] DALE V. SANDSTROM, Acting C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., BENNY A. GRAFF, S.J., concur.

[¶ 22] The Honorable Benny A. Graff, S.J., sitting in place of VandeWalle, C.J., disqualified.