2014 ND 222

**Tina M. GEORGE, Petitioner and Appellant**

v.

**Jess J. GEORGE, Respondent and Appellee.**

**No. 20140063.**

Supreme Court of North Dakota.

Dec. 18, 2014.

Gregory I. Runge (on brief), Bismarck, N.D., for petitioner and appellant.

Suzanne M. Schweigert (on brief), Bismarck, N.D., for respondent and appellee.

Mikayla Jablonski Jahner and James Fitzsimmons, Bismarck, N.D., for amicus curiae North Dakota Council On Abused Women's Services.

SANDSTROM, Justice.

[¶ 1] Tina George appeals from a district court order dismissing her petition for a disorderly conduct restraining order against her ex-husband, Jess George. Because the district court's findings are unclear and the law may have been misapplied in determining whether sufficient grounds existed to justify the issuance of a disorderly conduct restraining order, we reverse and remand to the district court.

I

[¶ 2] On January 17, 2014, Tina George petitioned the district court for a disorderly conduct restraining order against her ex-husband, alleging he had contacted her repeatedly following the parties' separation and subsequent divorce in an attempt to reconcile their relationship. Specifical-

ly, she claimed he committed various acts of disorderly conduct by driving past her residence on numerous occasions, sending her ten dozen flowers to her place of employment on their anniversary, following her from a family gathering, and accessing her voice mail messages. She also claimed that several months earlier she had tried to obtain a disorderly conduct restraining order against him, but that petition was dismissed. The district court issued a temporary restraining order against Jess George.

[¶ 3] At a February 2014 hearing, Tina George testified that although she asked her ex-husband to stop contacting her, he persisted in trying to talk with her about reconciling their relationship. She testified that after she requested he leave her alone, he continued to drive by her residence, approach her at her place of employment and in public, and send her numerous text messages.

[¶ 4] She also testified about three specific instances when he allegedly committed acts of disorderly conduct. She testified the first occurred on June 7, 2013, the parties' tenth wedding anniversary, when he sent her ten dozen roses while she was at work, despite having been told that she no longer wanted to remain in contact with him.

[¶ 5] She testified the second incident occurred in December 2013 when Jess George followed her after she had left a family holiday gathering very upset. She testified that she noticed he was following her on the interstate as she drove back to Bismarck and that she became frightened as a result and attempted to elude him by driving through a nearby neighborhood before stopping to file a police report.

[¶ 6] She testified the third incident occurred in January 2014 when Jess George confronted her about a voice mail message allegedly left on her cell phone by another man. She testified he was able to gain access to her voice mail messages because he knew her password and he became upset when he discovered another man had left a voice mail message for her.

[¶ 7] Before the hearing, Jess George submitted two affidavits in which he and the parties' eldest son contested Tina George's allegations. In his affidavit, Jess George alleged she had been dishonest about the facts presented in her petition, and he responded to her specific allegations. Jess George alleged that when he sent the ten dozen roses to her, he had been getting "mixed signals" and believed there was a chance of reconciling the relationship. In regard to the December 2013 incident, he claimed that after arriving at the family gathering, to which they both had been invited, and seeing her leave visibly upset, he chose to follow her in an attempt to discuss what had transpired. He also alleged that he did not tamper with Tina George's cell phone to access her voice mail messages; rather, their youngest child called her phone and entered her password to gain access to the voice mail message after he had expressed concerns about inappropriate text messages and pictures he had seen on her phone. Although Jess George admits he listened to the message, he insists he did so only because he was concerned about what their child had heard in the message.

[¶ 8] After hearing Tina George's testimony and having the opportunity to observe her demeanor, without allowing cross-examination or testimony from Jess George, the district court dismissed the petition for a disorderly conduct restraining order against Jess George, concluding she had failed to present sufficient evidence to justify the issuance of a restraining order. Although the district court said Jess George's behavior was "ill conceived," it found his behavior did not rise to the

level of disorderly conduct. Tina George appealed.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 12.1–31.2–01(2) and 27–05–06. Tina George timely appealed under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

■ [¶ 10] Tina George argues the district court abused its discretion in refusing to grant a disorderly conduct restraining order against Jess George.

■ [¶ 11] The language of N.D.C.C. § 12.1–31.2–01 relevant to this appeal provides:

1. "Disorderly conduct" means intrusive or unwanted acts, words, or gestures that are intended to adversely affect the safety, security, or privacy of another person. Disorderly conduct does not include constitutionally protected activity.

2. A person who is a victim of disorderly conduct or the parent or guardian of a minor who is a victim of disorderly conduct may seek a disorderly conduct restraining order from any court of competent jurisdiction in the manner provided in this section.

3. A petition for relief must allege facts sufficient to show the name of the alleged victim, the name of the individual engaging in the disorderly conduct, and that the individual engaged in disorderly conduct. An affidavit made under oath stating the specific facts and circumstances supporting the relief sought must accompany the petition.

4. If the petition for relief alleges reasonable grounds to believe that an individual has engaged in disorderly conduct, the court, pending a full hearing, *may* grant a temporary disorderly conduct restraining order ordering the individual to cease or avoid the disorderly conduct or to have no contact with the person requesting the order. A temporary restraining order may be entered only against the individual named in the petition. The court *may* issue the temporary restraining order without giving notice to the respondent. Unless otherwise terminated by the court, the temporary restraining order is in effect until a restraining order issued under subsection 5 is served.

5. The court *may* grant a disorderly conduct restraining order ordering the respondent to cease or avoid the disorderly conduct or to have no contact with the applicant if:

. . . .

   d. The court finds after the hearing that there are reasonable grounds to believe that the respondent has engaged in disorderly conduct. If a person claims to have been engaged in a constitutionally protected activity, the court shall determine the validity of the claim as a matter of law and, if found valid, shall exclude evidence of the activity.

(Emphasis added.) Here the use of the word "may" designates to the district court a permissive or non-mandatory authority to grant the restraining order if it finds reasonable grounds to believe the respondent has engaged in disorderly conduct. *See City of Devils Lake v. Corrigan*, 1999 ND 16, ¶ 13, 589 N.W.2d 579 ("We hold the word 'may' in the statute is permissive and does not require action."); Legislative Council, *North Dakota Legislative Draft-*

*ing Manual* 91 (2013) (distinguishes the mandatory nature of "shall" and the discretionary nature of "may").

[¶ 12] Before a district court may grant a restraining order, "[t]he petitioner's case must be proven in a full hearing before the court through testimony, rather than affidavits alone, with an opportunity for cross-examination." *Hanisch v. Kroshus*, 2013 ND 37, ¶ 11, 827 N.W.2d 528 (citing *Gonzalez v. Witzke*, 2012 ND 60, ¶ 18, 813 N.W.2d 592). "It is insufficient to show the person's actions are unwanted; rather, the petitioner must show specific unwanted acts that are intended to affect the safety, security, or privacy of another person." *Cusey v. Nagel*, 2005 ND 84, ¶ 7, 695 N.W.2d 697. "All that is required under the statute are 'reasonable grounds to believe that the respondent has engaged in disorderly conduct.'" *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 19, 705 N.W.2d 836 (citing N.D.C.C. § 12.1–31.2–01(5)(d)). The term "reasonable grounds" is synonymous with "probable cause." *Tibor v. Lund*, 1999 ND 176, ¶ 7, 599 N.W.2d 301. "Reasonable grounds exist 'when facts and circumstances presented to the judge are sufficient to warrant a person of reasonable caution to believe that acts constituting the offense of disorderly conduct have been committed.'" *Cusey*, at ¶ 6 (quoting *Svedberg v. Stamness*, 525 N.W.2d 678, 682 (N.D.1994)).

[¶ 13] "A district court has discretion to grant a disorderly conduct restraining order and to conduct a hearing on a petition for an order." *Gonzalez v. Witzke*, 2012 ND 60, ¶ 8, 813 N.W.2d 592 (citing *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 22, 705 N.W.2d 836). We will not reverse a district court's decision on whether or not to grant a restraining order or conduct a hearing unless there is an abuse of discretion. *Rebel v. Rebel*, 2013 ND 164, ¶ 13, 837 N.W.2d 351. A district court abuses its discretion when "it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Hanisch v. Kroshus*, 2013 ND 37, ¶ 9, 827 N.W.2d 528.

[¶ 14] A district court is afforded great deference in making its factual determinations, and in the issuance of disorderly conduct restraining orders, we have refused to supplant a district court's reasoned determination as to whether reasonable grounds exist to justify the issuance of a restraining order, because the determination lies within the sound discretion of the district court. *See Hanisch v. Kroshus*, 2013 ND 37, ¶ 15, 827 N.W.2d 528 (the district court did not err in finding respondent engaged in disorderly conduct by sending numerous derogatory text messages containing inappropriate pictures of petitioner that were intended to adversely affect the petitioner's "safety, security, and, in particular, intrude on her privacy"); *Rebel v. Rebel*, 2013 ND 164, ¶ 19, 837 N.W.2d 351 (the district court did not err in finding reasonable grounds to believe respondent engaged in disorderly conduct); *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 21, 705 N.W.2d 836 (the district court did not err in holding that respondent's actions constituted disorderly conduct); *Wishnatsky v. Huey*, 1997 ND 35, ¶ 16, 560 N.W.2d 878 (the district court did not err in summarily dismissing the restraining order petition).

[¶ 15] This deference is also afforded to the district court in other cases governed by the abuse of discretion standard. For example, in contempt cases we have held that although facts may be present to justify the issuance of a contempt order, whether to hold a person in contempt is within the discretion of the district court.

In *Nieuwenhuis v. Nieuwenhuis*, we stated, "A district court has broad discretion in deciding whether to hold a person in contempt, and a court's finding of contempt will not be reversed on appeal unless there is a clear abuse of discretion." 2014 ND 145, ¶ 43, 851 N.W.2d 130 (citations and quotation marks omitted). We held the district court did not abuse its discretion in denying a petition to hold the petitioner's ex-wife in contempt for failing to comply with the parties' settlement agreement although the requisite findings for a contempt order were arguably present. *Id.; see also Sall v. Sall,* 2011 ND 202, ¶¶ 6–9, 804 N.W.2d 378; *Berg v. Berg,* 2000 ND 37, ¶ 11, 606 N.W.2d 903.

[¶ 16] Tina George argues the district court abused its discretion by dismissing the disorderly conduct restraining order petition, because the court ignored a "myriad of allegations" that created the requisite reasonable grounds to support a finding that Jess George committed disorderly conduct. She specifically focuses on the district court's acknowledgment that Jess George "intentionally invaded her sense of security and privacy" by accessing her voice mail, and she argues this finding alone should justify the issuance of the restraining order.

[¶ 17] To justify the issuance of a disorderly conduct restraining order, the petitioner "must show specific unwanted acts that are intended to affect the safety, security, or privacy of another person." *Cusey v. Nagel,* 2005 ND 84, ¶ 7, 695 N.W.2d 697. After hearing Tina George's testimony and determining the weight and credibility of the evidence before it, the district court found that although it was concerned that Jess George may have "invaded [Tina George's] sense of security and privacy" by accessing her voice mail messages, it determined he did not possess the requisite intent to justify the issuance of the restraining order. In deciding to dismiss the disorderly conduct restraining order, the district court stated:

> I'm going to dismiss this case. And heres [sic] why: As ill conceived as it could be, and as dumb as it is, your behavior, Mr. George, is classic stalking which is why you've been charged. I have to find—for me to issue this—is that you have done this with the intent of *hurting* her. And everything I've got is you're trying to reconcile. Obviously it has a negative impact on her. I don't get that that was your intent which I have to find. It's not the problem with stalking they have—just have to show that you intentionally engaged in the course of conduct which had the affect [sic] of frightening her, which it can. So you've got bigger problems to worry about, namely the criminal case, whatever it is that you're charged with, stalking. But I don't find it's disorderly conduct. . . .

> There was a piece of evidence that concerned me that was hacking into her phone, intentionally invaded [sic] her sense of security and privacy. But I have [the discretion] even then to issue a restraining order, and I'm going to exercise my judicial [discretion] not to.

(Emphasis added.) While it characterized Jess George's actions as "stalking" and said he "intentionally engaged in the course of conduct" and "intentionally invaded her sense of security and privacy," the district court said it did not find the requisite intent for issuing a disorderly conduct restraining order because Jess George's actions were based upon his desire to reconcile the parties' relationship and were not deliberate attempts to hurt Tina George. To the extent that the district court said the respondent had to have had the "intent of hurting her" as opposed to an intent "to affect [her] safety, securi-

ty, or privacy," the court appears to have misapplied or misinterpreted N.D.C.C. § 12.1–31.2–01. *See State v. Ova,* 539 N.W.2d 857, 859 (N.D.1995) (a district court errs even if correctly reciting the legal standard if the court does not correctly apply that standard).

[¶ 18] Although we have repeatedly recognized that the determination of whether to grant a disorderly conduct restraining order "is a province firmly entrusted to the [district] court" because the court "is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence," it is imperative that this grant of discretion is strictly conditioned on the district court's proper application and interpretation of the applicable law in reaching its final decision to grant or deny a disorderly conduct restraining order under N.D.C.C. § 12.1–31.2–01. *Svedberg,* 525 N.W.2d at 682 (citation omitted). In order to maintain the integrity and purpose of N.D.C.C. § 12.1–31.2–01, a district court must restrict its analysis to whether a petitioner has alleged facts sufficient to show the respondent has intentionally and adversely affected the safety, security, or privacy of another person, not whether the respondent intends to harm the petitioner. Because it appears the district court may have failed to do so, and its factual findings appear inconsistent, we cannot affirm the denial of the disorderly conduct restraining order. *See Hoverson v. Hoverson,* 2001 ND 124, ¶ 27, 629 N.W.2d 573 ("We will remand for clarification if we cannot discern the rationale for the trial court's decision through inference or deduction."); *Gould v. Miller,* 488 N.W.2d 42, 44 (N.D.1992) (when a district court does not fully explain its decision, we will not upset its decision if valid reasons are fairly discernible either by deduction or inference).

## III

[¶ 19] We reverse and remand for the district court to clarify its factual findings and to correctly apply the law in exercising its discretion in determining whether to issue a disorderly conduct restraining order.

[¶ 20] GERALD W. VANDEWALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.